587 S.W.2d 393 (1979)
Judith Leigh PEARSON, Appellant,
v.
The STATE of Texas, Appellee.
No. 58055.
Court of Criminal Appeals of Texas, Panel No. 3.
July 3, 1979.
Rehearing Denied October 17, 1979.
Stephen E. VanGaasbeck and E. D. Christensen, Houston, for appellant.
Carol S. Vance, Dist. Atty., Michael Kuhn, and Vic Driscoll, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.
Before ODOM, PHILLIPS and W. C. DAVIS, JJ.
Rehearing En Banc Denied October 17, 1979.

OPINION
ODOM, Judge.
This is an appeal from a conviction for murder; punishment was assessed by the court at life.
The sufficiency of the evidence is not challenged. Although three grounds of error are asserted in the brief, the second was abandoned at oral argument, leaving two issues for consideration in this appeal.
In her first ground of error appellant contends the trial court erroneously admitted papers and writings seized during a search of the homicide scene. As pointed out in her supplemental brief, this search and seizure were in violation of the principle announced in Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The search was conducted on April 9, 1976, and the trial in this case was in January of 1977. Thus, both the search and trial were conducted prior to the decision in Mincey v. Arizona, supra. At that time the common law "exigency rule" allowed such homicide scene investigations. Brown v. State, 475 S.W.2d 938, 948-950. We are therefore confronted with the question of the retroactive effect of Mincey.
In United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), the court discussed the retroactivity of exclusionary rule cases from the perspectives of *394 both the imperative of judicial integrity and the deterrence rationale:
"Since 1965 this Court has repeatedly struggled with the question of whether rulings in criminal cases should be given retroactive effect. In those cases `[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials,' Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971), the doctrine has quite often been applied retroactively. It is indisputable, however, that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the factfinding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Stovall v. Denno, supra [388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199]; Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969); Williams v. United States, supra; Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).
"We think that these cases tell us a great deal about the nature of the exclusionary rule, as well as something about the nature of retroactivity analysis. Decisions of this Court applying the exclusionary rule to unconstitutionally seized evidence have referred to `the imperative of judicial integrity,' Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960), although the Court has relied principally upon the deterrent purpose served by the exclusionary rule. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968); See also United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). And see also Oaks, Studying the Exclusionary Rule in Search and Seizure, 37 U.Chi.L.Rev. 665, 668-672 (1970).
"When it came time to consider whether those decisions would be applied retroactively, however, the Court recognized that the introduction of evidence which had been seized by law enforcement officials in good-faith compliance with then-prevailing constitutional norms did not make the courts `accomplices in the willful disobedience of a Constitution they are sworn to uphold.' Elkins v. United States, supra, 364 U.S., at 223, 80 S.Ct. at 1447. Thus, while the `imperative of judicial integrity' played a role in this Court's decision to overrule Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), see Mapp v. Ohio, supra, 367 U.S., at 659, 81 S.Ct. at 1693, the Mapp decision was not applied retroactively: `Rather than being abhorrent at the time of seizure in this case, the use in state trials of illegally seized evidence had been specifically authorized by this Court in Wolf.' Linkletter v. Walker, supra, 381 U.S., at 638, 85 S.Ct., at 1742 (footnote omitted). Similarly, in Lee v. Florida, supra, this Court overruled Schwartz v. Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231 (1952), and held that evidence seized in violation of Sec. 605 of the Federal Communications Act of 1934, 48 Stat. 1103, 47 U.S.C. Sec. 605, by state officers could not be introduced into evidence at state criminal trials:
"`[T]he decision we reach today is not based upon language and doctrinal symmetry alone. It is buttressed as well by the "imperative of judicial integrity." Elkins v. United States, 364 U.S. 206, 222, [80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669]. Under our Constitution no court, state or *395 federal, may serve as an accomplice in the willful transgression of "the Laws of the United States," laws by which "the Judges in every State [are] bound ..."' 392 U.S., at 385-386, 88 S.Ct. at 2101 (footnotes omitted).
"But when it came time to consider the retroactivity of Lee, the Court held that it would not be applied retroactively, saying:
"`Retroactive application of Lee would overturn every state conviction obtained in good-faith reliance on Schwartz. Since this result is not required by the principle upon which Lee was decided, or necessary to accomplish its purpose, we hold that the exclusionary rule is to be applied only to trials in which the evidence is sought to be introduced after the date of our decision in Lee.' Fuller v. Alaska, supra, 393 U.S., at 81, 89 S.Ct. at 62.
"The teaching of these retroactivity cases is that if the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the `imperative of judicial integrity' is not offended by the introduction into evidence of that material even if decisions subsequent to the search or seizure have broadened the exclusionary rule to encompass evidence seized in that manner. It would seem to follow a fortiori from the Linkletter and Fuller holdings that the `imperative of judicial integrity' is also not offended if law enforcement officials reasonably believed in good faith that their conduct was in accordance with the law even if decisions subsequent to the search or seizure have held that conduct of the type engaged in by the law enforcement officials is not permitted by the Constitution. For, although the police in Linkletter and Fuller could not have been expected to foresee the application of the exclusionary rule to state criminal trials, they could reasonably have entertained no similar doubts as to the illegality of their conduct. See Wolf v. Colorado, 338 U.S., at 27, 69 S.Ct. at 1361; Sec. 605 of the Federal Communications Act of 1934; cf. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937).
"This approach to the `imperative of judicial integrity' does not differ markedly from the analysis the Court has utilized in determining whether the deterrence rationale undergirding the exclusionary rule would be furthered by retroactive application of new constitutional doctrines. See Linkletter v. Walker, supra, 381 U.S., at 636-637, 85 S.Ct., at 1741-1742; Fuller v. Alaska, supra, 393 U.S., at 81, 89 S.Ct., at 62; Desist v. United States, supra, 394 U.S., at 249-251, 89 S.Ct., at 1033-1035. In Desist, the Court explicitly recognized the interrelation between retroactivity rulings and the exclusionary rule: `[W]e simply decline to extend the court-made exclusionary rule to cases in which its deterrent purpose would not be served.' 394 U.S., at 254 n. 24, 89 S.Ct., at 1036.
"This focus in the retroactivity cases on the purposes served by the exclusionary rule is also quite in harmony with the approach taken generally to the exclusionary rule. In United States v. Calandra, 414 U.S., at 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, we said that the exclusionary rule `is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' It follows that `the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.' Ibid. We likewise observed in Michigan v. Tucker, 417 U.S., at 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182:
"`The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action *396 was pursued in complete good faith, however, the deterrence rationale loses much of its force.'"
We hold that because the search and trial in this case occurred before the decision in Mincey v. Arizona, supra, when Brown v. State, supra, was still good law, the disposition of appellant's first ground of error is controlled by Brown instead of Mincey. The ground of error is overruled.
In the other ground of error presented by appellant, she contends that handwriting samples taken from her and used as evidence in the case were the product of an illegal arrest. She argues the arrest was illegal because she was not taken before a magistrate until four days after her arrest and after the handwriting samples were taken. We note that handwriting samples do not violate the privilege against self-incrimination, Olson v. State, Tex.Cr.App., 484 S.W.2d 756, and that no causal connection between the failure to take her before a magistrate and the taking of the handwriting samples was shown. Hester v. State, Tex.Cr.App., 544 S.W.2d 129, 134-135.
The ground of error is overruled.
The judgment is affirmed.
Before the Court en banc.
PHILLIPS, Judge, dissenting on the denial of appellant's motion for rehearing en banc.
I cannot agree that Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), is not retroactive. The Supreme Court in Mincey did nothing more than apply well-established Fourth Amendment law. The opinion in Mincey, 98 S.Ct. at 2412-2413, states:
... The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576; see also South Dakota v. Opperman, 428 U.S. 364, 381, 96 S.Ct. 3092, 3103, 49 L.Ed.2d 1000 (POWELL, J., concurring); Coolidge v. New Hampshire, 403 U.S. 443, 481, 91 S.Ct. 2022, 2045, 29 L.Ed.2d 564; Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409; Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889; Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 1232, 92 L.Ed. 1663. The Arizona Supreme Court did not hold that the search of the petitioner's apartment fell within any of the exceptions to the warrant requirement previously recognized by this Court, but rather that the search of a homicide scene should be recognized as an additional exception.
Several reasons are advanced by the State to meet its "burden ... to show the existence of such an exceptional situation" as to justify creating a new exception to the warrant requirement. See Vale v. Louisiana, supra, 399 U.S., at 34, 90 S.Ct., at 1971; Jeffers v. United States, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59. None of these reasons, however, persuades us of the validity of the generic exception delineated by the Arizona Supreme Court.
..., we hold that the "murder scene exception" created by the Arizona Supreme Court is inconsistent with the Fourth and Fourteenth Amendments that the warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there.9 [Footnote omitted]
Mincey did not announce any new rule of law, or represent a "sharp break in the web of the law." See United States v. Hart, 546 F.2d 798 (9th Cir. 1976). What Mincey did was mend a break in the law caused by a *397 number of cases which gradually evolved into the so-called "murder scene exception" to the warrant requirement. As pointed out in Mincey, this is not and never has been a valid exception to the warrant requirement. It appears to have evolved from cases which held that a warrantless entry into a home was justified in the event the police had reason to believe that a person was dying or otherwise in need of immediate aid. See United States v. Barone, 330 F.2d 543 (2d Cir. 1964); Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963). This is a recognized exception to the warrant requirement. See Mincey, 98 S.Ct. at 2413-2414. Once inside, the officers may seize incriminating evidence that is in plain view, or inspect the premises to make sure that all danger has passed and the situation is under control, as these are also recognized exceptions. See Mincey, 98 S.Ct. at 2414. But a general search of the premises for incriminating evidence, after the emergency has subsided, is not and has never been justifiable.
The majority states that at the time of the search in this case the "common law `exigency rule' allowed such homicide scene investigations," citing Brown v. State, 475 S.W.2d 938 (Tex.Cr.App.1971). To the extent that Brown and its isolated companions Tocher v. State, 501 S.W.2d 921 (Tex.Cr. App.1973), and Corbett v. State, 493 S.W.2d 940 (Tex.Cr.App.1973), authorized searches under the "murder scene exception," they were not based on precedent and were clearly contrary to established Fourth Amendment law. It is reasonable to assume that a lawyer familiar with search and seizure law would have recognized these cases as a substantial departure from established law, and could have advised interested parties that these cases represented unsound authority.
I see no reason to retroactively apply such sparse case law that has been open to serious question since its inception. I would hold that since Mincey simply applied existing search and seizure law and stated nothing that we did not know already, it should be applied retroactively. Compare United States v. Hart, supra; United States v. Martinez, 526 F.2d 954 (5th Cir. 1976).
United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), does not require a different result. The 9th Circuit Court of Appeals had held in Peltier that the decision in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), holding a warrantless border search of an automobile unconstitutional, was to be applied retroactively because the decision overruled no prior Supreme Court decision and reaffirmed established law. In reversing the Ninth Circuit in Peltier, the Supreme Court noted that border searches of the type struck down by Almeida-Sanchez had been upheld by the courts for 20 years, and that the border patrol agents were acting under the express authority of a statute and long-standing administrative regulations. It concluded from this that the officers' conduct in performing the searches and seizures was not "blameworthy." The case law on the "murder scene exception" is sparse, of dubious origin, without statutory approval, and has been openly contrary to established Fourth Amendment law from the beginning. The conduct of the officers in this case cannot be labeled blameless.
Finally, although the Court in Peltier engaged in a general discussion of the retroactivity of exclusionary rule cases, Peltier did not establish a per se rule that cases which extend the scope of the exclusionary rule should not be applied retroactively. To accept it as such would be to adopt just the "mechanical approach" to the issue of retroactivity that the Court in Peltier repudiated.
I dissent to the denial of appellant's motion for rehearing.