T. Eugene THOMPSON,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C3–85–1663.

Supreme Court of Minnesota.

April 11, 1986.

Richard T. Oakes, Hamline University School of Law, St. Paul, Jack S. Nordby, James Kerr, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Hennepin Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

COYNE, Justice.

On December 6, 1963, T. Eugene Thompson was convicted of first degree murder and sentenced to life imprisonment. The facts surrounding the brutal murder of Thompson's wife, Carol, are set out in detail in *State v. Thompson*, 273 Minn. 1, 139 N.W.2d 490, *cert. denied*, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966), in which the judgment of conviction was affirmed, and will not be repeated on this, the twelfth occasion this murder or disputes in some way related to the murder have been before this court. This appeal is from the denial of Thompson's petition for post-conviction relief brought pursuant to Minn. Stat. § 590.01, subd. 3 (1984) subsequent to his release on parole. We affirm.

The premises on which Thompson's petition rests are (1) that the decision in *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), significantly changed the substantive law relating to searches and seizures; (2) that as a person convicted and sentenced for a crime committed before May 1, 1980, he is entitled to post-conviction relief under section 590.01, subd. 3, upon the ground that the significant change in substantive law adopted in *Mincey* should, in the interest of justice, be applied retrospectively; and (3) that if the warrantless search of the Thompson home were tested according to the principle articulated in *Mincey*, it would be found violative of his rights under the Fourth Amendment to the United States Constitution. Therefore, Thompson contends, he is entitled to a new trial at which the products of the search—pieces of a plastic gun grip, three cartridges for the gun, a rubber hose, certain items of clothing, a jewel case, a ring, and numerous photographs—are suppressed.

The facts of the *Mincey* case are these: During a narcotics raid on Mincey's apartment, Mincey shot and killed an undercover police officer. Mincey was severely wounded. Within 10 minutes homicide detectives arrived on the scene. Their search lasted four days and was "exhaustive and intrusive." *Id.* at 389, 98 S.Ct. at 2411. The police inspected the contents of drawers, closets, and cupboards; they emptied clothing pockets; they pulled up sections of carpet. Every item in the apartment was examined and inventoried and 200 to 300 objects were seized. No warrant was ever obtained. The Arizona Supreme Court held that a reasonable warrantless search of the scene of a homicide is constitutionally permissible if the search is begun reasonably promptly and if the police were legally on the premises in the first instance. *State v. Mincey*, 115 Ariz. 472, 482–83, 566 P.2d 273, 283 (1977). The United States Supreme Court reversed, rejecting what it characterized as an attempt not to bring the search of Mincey's apartment within any of the previously recognized exceptions to the warrant requirement but rather to justify it on the ground that the search of a homicide scene ought to be recognized as a new exception:

> In sum, we hold that the 'murder scene exception' created by the Arizona Supreme Court is inconsistent with the Fourth and Fourteenth Amendments— that the warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there.

*Mincey,* 437 U.S. at 395, 97 S.Ct. at 2414. The Court expressly reserved to the Arizona courts determination of the admissibility of the seized items under any established exception to the warrant requirement.

Whether or not *Mincey v. Arizona* marks the birth of a new constitutional doctrine—i.e., a substantial change in substantive law—seems to be a matter upon which opinions differ. The Texas Court of Criminal Appeals regarded *Mincey* as changing the law. *Pearson v. State,* 587 S.W.2d 393 (Tex.Crim.App.1979), *cert. denied,* 446 U.S. 912, 100 S.Ct. 1844, 64 L.Ed.2d 266 (1980). Nevertheless, it declined to give *Mincey* retrospective effect, relying on this language from *United States v. Peltier,* 422 U.S. 531, 535, 95 S.Ct. 2313, 2316, 45 L.Ed.2d 374 (1975):

> In those cases "[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truthfinding function and so raises serious questions about the accuracy of guilty verdicts in past trials," *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971), the doctrine has quite often been applied retroactively. It is indisputable, however, that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the factfinding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application.

*Pearson,* 587 S.W.2d at 394. "On the facts" of the case before it, the United States Court of Appeals for the Fifth Circuit also declined to apply *Mincey* retroactively. *United States v. Jones,* 597 F.2d 485 (5th Cir.1979), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 728 (1980).

On the other hand, it seems to us that *Mincey* does not represent a change in the law so much as a refusal to change existing law. The Supreme Court had not previously recognized the scene of a murder as an exception to the warrant requirement. In *Mincey,* the Court refused to depart from traditional search and seizure law by carving out a new exception. *See* 2 LaFave, *Search and Seizure* § 6.5 at 464 (1978). Since *Mincey* did not change the law, retrospective application would be both baseless and fruitless.

Regardless, however, whether *Mincey* declares new law or simply reiterates established law, it does not address the well recognized exception to the warrant requirement on which rested the determination that the search of the Thompson home was constitutionally permissible—consent to search. Two appellate tribunals have held that Thompson consented to the search, and it was on that basis that the evidence removed from the Thompson home was held admissible.

Prior to trial Thompson moved to suppress the evidence on the ground that it was illegally seized in contravention of the Fourth and Fourteenth Amendments to the United States Constitution and art. 1, § 10, of the Minnesota Constitution. Denial of that motion was fully considered on appeal from the judgment of conviction. Affirming the conviction, this court held that Thompson had consented, at least tacitly, to the search. Not only did Thompson voice no objection to the search, he gave every indication of a desire to cooperate with the police in finding his wife's assailant, to assist in apprehending the perpetrator of the crime. At the hospital on the morning of the murder, Thompson raised the possibility of robbery as a motive for the crime and "suggested [to the police] that they go to his home and look in the basement to see if quite a large sum of money he kept there had been taken." *State v. Thompson,* 273 Minn. at 1, 11, 139 N.W.2d at 500 (1966). We pointed out that when the owner or occupant of the premises permits the police to make a search without a warrant at a time when the occupant is not even suspected of complicity in the crime, the police are lulled into a sense of security, and we ruled that the occupant

could not later object if the search led to the discovery of evidence which ultimately resulted in his being charged with complicity in the crime.

That it was Thompson's consent to the search of his home on which the lawfulness of the search turned—not simply on the fact that it was the scene of the murder—is apparent from the language of the opinion:

> [I]f the search and seizure is lawful when made, it remains so, *even though the occupant could have objected and required a search warrant at the time the search was conducted.* * * * There is no invasion of privacy where the search is with the express or tacit consent of the one who has the right to object."

273 Minn. at 22, 139 N.W.2d at 506 (emphasis added).

In 1975, the United States Court of Appeals for the Eighth Circuit, on appeal from denial of Thompson's petition for writ of habeas corpus, declared it was satisfied that the entry by the police was proper because the police had reasonable grounds to believe that it was authorized by Thompson. *Thompson v. McManus,* 512 F.2d 769 (8th Cir.), *cert. denied,* 421 U.S. 1014, 95 S.Ct. 2421, 44 L.Ed.2d 683 (1975).

Thus, the question of the legality of the search has been finally adjudicated, not once, but twice. Both times the determination has turned on Thompson's consent. Neither court attempted to carve out a "murder scene" exception to the warrant requirement. Accordingly, the district court did not err in denying the petition for post-conviction relief.

Affirmed.