## VALE *v.* LOUISIANA

No. 727.  Argued March 4–5, 1970—Decided June 22, 1970

*Eberhard P. Deutsch,* by appointment of the Court, 396 U. S. 883, argued the cause for appellant.  With him on the brief was *René H. Himel, Jr.*

*Louise Korns* argued the cause for appellee. With her on the brief were *Jack P. F. Gremillion,* Attorney General of Louisiana, and *Jim Garrison.*

Mr. Justice Stewart delivered the opinion of the Court.

The appellant, Donald Vale, was convicted in a Louisiana court on a charge of possessing heroin and was sentenced as a multiple offender to 15 years' imprisonment at hard labor. The Louisiana Supreme Court affirmed the conviction, rejecting the claim that evidence introduced at the trial was the product of an unlawful search and seizure. 252 La. 1056, 215 So. 2d 811. We granted Vale's motion to proceed *in forma pauperis,* postponed consideration of the question of jurisdiction to the hearing of the case on the merits, and limited review to the search-and-seizure question. 396 U. S. 813.*

The evidence adduced at the pretrial hearing on a motion to suppress showed that on April 24, 1967, officers possessing two warrants for Vale's arrest and having information that he was residing at a specified address proceeded there in an unmarked car and set up a surveillance of the house. The evidence of what then took

*In his Notice of Appeal, Vale asserted that the Louisiana Supreme Court in affirming the conviction had relied upon a state statute, Article 225 of the Louisiana Code of Criminal Procedure (1967), which provides in pertinent part:

"A peace officer making an arrest shall take from the person arrested all weapons and incriminating articles which he may have about his person."

Although the state court referred to this statute in the course of its opinion, we do not understand its decision to be grounded on the statute. We therefore dismiss the appeal and treat the papers as a petition for certiorari, which is hereby granted. 28 U. S. C. § 2103.

place was summarized by the Louisiana Supreme Court as follows:

"After approximately 15 minutes the officers observed a green 1958 Chevrolet drive up and sound the horn and after backing into a parking place, again blew the horn. At this juncture Donald Vale, who was well known to Officer Brady having arrested him twice in the previous month, was seen coming out of the house and walk up to the passenger side of the Chevrolet where he had a close brief conversation with the driver; and after looking up and down the street returned inside of the house. Within a few minutes he reappeared on the porch, and again cautiously looked up and down the street before proceeding to the passenger side of the Chevrolet, leaning through the window. From this the officers were convinced a narcotics sale had taken place. They returned to their car and immediately drove toward Donald Vale, and as they reached within approximately three cars lengths from the accused, (Donald Vale) he looked up and, obviously recognizing the officers, turned around, walking quickly toward the house. At the same time the driver of the Chevrolet started to make his get away when the car was blocked by the police vehicle. The three officers promptly alighted from the car, whereupon Officers Soule and Laumann called to Donald Vale to stop as he reached the front steps of the house, telling him he was under arrest. Officer Brady at the same time, seeing the driver of the Chevrolet, Arizzio Saucier, whom the officers knew to be a narcotic addict, place something hurriedly in his mouth, immediately placed him under arrest and joined his co-officers. Because of the trans-

action they had just observed they, informed Donald
Vale they were going to search the house, and there-
upon advised him of his constitutional rights. After
they all entered the front room, Officer Laumann
made a cursory inspection of the house to ascertain
if anyone else was present and within about three
minutes Mrs. Vale and James Vale, mother and
brother of Donald Vale, returned home carrying
groceries and were informed of the arrest and im-
pending search." 252 La., at 1067–1068, 215 So.
2d, at 815. (Footnote omitted.)

The search of a rear bedroom revealed a quantity of
narcotics.

The Louisiana Supreme Court held that the search of
the house did not violate the Fourth Amendment because
it occurred "in the immediate vicinity of the arrest" of
Donald Vale and was "substantially contemporaneous
therewith . . . ." 252 La., at 1070, 215 So. 2d, at 816.
We cannot agree. Last Term in *Chimel* v. *California,*
395 U. S. 752, we held that when the search of a dwelling
is sought to be justified as incident to a lawful arrest, it
must constitutionally be confined to the area within the
arrestee's reach at the time of his arrest—"the area from
within which he might gain possession of a weapon or
destructible evidence." 395 U. S., at 763. But even if
*Chimel* is not accorded retroactive effect—a question on
which we do not now express an opinion—no precedent
of this Court can sustain the constitutional validity of
the search in the case before us.

A search may be incident to an arrest " 'only if it is
substantially contemporaneous with the arrest and is con-
fined to the *immediate* vicinity of the arrest.' " *Shipley* v.
*California,* 395 U. S. 818, 819; *Stoner* v. *California,* 376
U. S. 483, 486. If a search of a house is to be upheld

as incident to an arrest, that arrest must take place *inside* the house, cf. *Agnello* v. *United States,* 269 U. S. 20, 32, not somewhere outside—whether two blocks away, *James* v. *Louisiana,* 382 U. S. 36, twenty feet away, *Shipley* v. *California, supra,* or on the sidewalk near the front steps. "Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant." *Agnello* v. *United States, supra,* at 33. That basic rule "has never been questioned in this Court." *Stoner* v. *California, supra,* at 487 n. 5.

The Louisiana Supreme Court thought the search independently supportable because it involved narcotics, which are easily removed, hidden, or destroyed. It would be unreasonable, the Louisiana court concluded, "to require the officers under the facts of the case to first secure a search warrant before searching the premises, as time is of the essence inasmuch as the officers never know whether there is anyone on the premises to be searched who could very easily destroy the evidence." 252 La., at 1070, 215 So. 2d, at 816. Such a rationale could not apply to the present case, since by their own account the arresting officers satisfied themselves that no one else was in the house when they first entered the premises. But entirely apart from that point, our past decisions make clear that only in "a few specifically established and well-delineated" situations, *Katz* v. *United States,* 389 U. S. 347, 357, may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it. The burden rests on the State to show the existence of such an exceptional situation. *Chimel* v. *California, supra,* at 762; *United States* v. *Jeffers,* 342 U. S. 48, 51; *McDonald* v. *United States,* 335 U. S. 451, 456. And the record before us discloses none.

There is no suggestion that anyone consented to the search. Cf. *Zap* v. *United States,* 328 U. S. 624, 628. The officers were not responding to an emergency. *United States* v. *Jeffers, supra,* at 52; *McDonald* v. *United States, supra,* at 454. They were not in hot pursuit of a fleeing felon. *Warden* v. *Hayden,* 387 U. S. 294, 298–299; *Chapman* v. *United States,* 365 U. S. 610, 615; *Johnson* v. *United States,* 333 U. S. 10, 15. The goods ultimately seized were not in the process of destruction. *Schmerber* v. *California,* 384 U. S. 757, 770–771; *United States* v. *Jeffers, supra; McDonald* v. *United States, supra,* at 455. Nor were they about to be removed from the jurisdiction. *Chapman* v. *United States, supra; Johnson* v. *United States, supra; United States* v. *Jeffers, supra.*

The officers were able to procure two warrants for Vale's arrest. They also had information that he was residing at the address where they found him. There is thus no reason, so far as anything before us appears, to suppose that it was impracticable for them to obtain a search warrant as well. Cf. *McDonald* v. *United States, supra,* at 454–455; *Trupiano* v. *United States,* 334 U. S. 699, 705–706; *Johnson* v. *United States, supra; Taylor* v. *United States,* 286 U. S. 1, 6; *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, 358; *Carroll* v. *United States,* 267 U. S. 132, 156; cf. *Ker* v. *California,* 374 U. S. 23, 42 (opinion of Clark, J.). We decline to hold that an arrest on the street can provide its own "exigent circumstance" so as to justify a warrantless search of the arrestee's house.

The Louisiana courts committed constitutional error in admitting into evidence the fruits of the illegal search. *Shipley* v. *California, supra,* at 819; *James* v. *Louisiana, supra,* at 37; *Ker* v. *California, supra,* at 30–34; *Mapp* v. *Ohio,* 367 U. S. 643. Accordingly, the judgment is

reversed and the case is remanded to the Louisiana Supreme Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE joins, dissenting.

The Fourth Amendment to the United States Constitution prohibits only "unreasonable searches."* A warrant has never been thought to be an absolute requirement for a constitutionally proper search. Searches, whether with or without a warrant, are to be judged by whether they are reasonable, and, as I said, speaking for the Court in *Preston* v. *United States,* 376 U. S. 364, 366–367 (1964), common sense dictates that reasonableness varies with the circumstances of the search. See, *e. g., Henry* v. *United States,* 361 U. S. 98 (1959); *Brinegar* v. *United States,* 338 U. S. 160 (1949). The Louisiana Supreme Court held not only that the police action here was reasonable but also that failure to conduct an immediate search would have been unreasonable. 252 La. 1056, 1070, 215 So. 2d 811, 816. With that view I am in complete agreement, for the following reasons.

The police, having warrants for Vale's arrest, were watching his mother's house from a short distance away. Not long after they began their vigil a car arrived,

---

*The Fourth Amendment says:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

sounded its horn, and backed into a parking space near the house. The driver did not get out, but instead honked the car horn again. Vale, who had been arrested twice the month before and against whom an indictment for a narcotics offense was then pending, came out of his mother's house and talked to the driver of the car. At the conclusion of the conversation Vale looked both ways, up and down the street, and then went back inside the house. When he reappeared he stopped before going to the car and stood, as one of the officers testified, "[l]ooking back and forth like to see who might be coming or who was in the neighborhood." He then walked to the car and leaned in.

From this behavior the officers were convinced that a narcotics transaction was taking place at that very moment. They drove down the street toward Vale and the parked car. When they came within a few car lengths of the two men Vale saw them and began to walk quickly back toward the house. At the same time the driver of the car attempted to pull away. The police brought both parties to the transaction to a stop. They then saw that the driver of the car was one Saucier, a known narcotics addict. He hurriedly placed something in his mouth, and apparently swallowed it. The police placed both Vale and Saucier under arrest.

At this point the police had probable cause to believe that Vale was engaged in a narcotics transfer, and that a supply of narcotics would be found in the house, to which Vale had returned after his first conversation, from which he had emerged furtively bearing what the police could readily deduce was a supply of narcotics, and toward which he hurried after seeing the police. But the police did not know then who else might be in the house. Vale's arrest took place near the house, and anyone observing from inside would surely have been alerted to destroy the stocks of contraband which

the police believed Vale had left there. The police had already seen Saucier, the narcotics addict, apparently swallow what Vale had given him. Believing that some evidence had already been destroyed and that other evidence might well be, the police were faced with the choice of risking the immediate destruction of evidence or entering the house and conducting a search. I cannot say that their decision to search was unreasonable. Delay in order to obtain a warrant would have given an accomplice just the time he needed.

That the arresting officers did, in fact, believe that others might be in the house is attested to by their actions upon entering the door left open by Vale. The police at once checked the small house to determine if anyone else was present. Just as they discovered the house was empty, however, Vale's mother and brother arrived. Now what had been a suspicion became a certainty: Vale's relatives were in possession and knew of his arrest. To have abandoned the search at this point, and left the house with Vale, would not have been the action of reasonable police officers. As MR. JUSTICE WHITE said, dissenting in *Chimel* v. *California*, 395 U. S. 752, 775 (1969):

> "For the police to search the house while the evidence they had probable cause to search out and seize was still there cannot be considered unreasonable."

In my view, whether a search incident to a lawful arrest is reasonable should still be determined by the facts and circumstances of each case. *Ker* v. *California*, 374 U. S. 23, 34–36 (1963); *United States* v. *Rabinowitz*, 339 U. S. 56, 63–64 (1950). For the reasons given above I am convinced that the search here was reasonable, even though Vale had not yet crossed the threshold of the house toward which he was headed.

Moreover, the circumstances here were sufficiently exceptional to justify a search, even if the search was not strictly "incidental" to an arrest. The Court recognizes that searches to prevent the destruction or removal of evidence have long been held reasonable by this Court. *Preston* v. *United States, supra; McDonald* v. *United States,* 335 U. S. 451, 455 (1948); *Carroll* v. *United States,* 267 U. S. 132 (1925). Whether the "exceptional circumstances" justifying such a search exist or not is a question that may be, as it is here, quite distinct from whether or not the search was incident to a valid arrest. See *United States* v. *Jeffers,* 342 U. S. 48, 51 (1951); *Johnson* v. *United States,* 333 U. S. 10 (1948). It is thus unnecessary to determine whether the search was valid as incident to the arrest under either *Chimel* v. *California, supra,* or under the pre-*Chimel* standard as interpreted in *Shipley* v. *California,* 395 U. S. 818 (1969). It is only necessary to find that, given Vale's arrest in a spot readily visible to anyone in the house and the probable existence of narcotics inside, it was reasonable for the police to conduct an immediate search of the premises.

The Court, however, finds the search here unreasonable. First, the Court suggests that the contraband was not "in the process of destruction." None of the cases cited by the Court supports the proposition that "exceptional circumstances" exist only when the process of destruction has already begun. On the contrary we implied that those circumstances did exist when "evidence or contraband was *threatened* with removal or destruction." *Johnson* v. *United States, supra,* at 15 (emphasis added). See also *Chapman* v. *United States,* 365 U. S. 610, 615 (1961); *Hernandez* v. *United States,* 353 F. 2d 624 (C. A. 9th Cir. 1965), cert. denied, 384 U. S. 1008 (1966).

Second, the Court seems to argue that the search was unreasonable because the police officers had time to obtain a warrant. I agree that the opportunity to obtain a warrant is one of the factors to be weighed in determining reasonableness. *Trupiano* v. *United States,* 334 U. S. 699 (1948); *United States* v. *Rabinowitz, supra,* at 66 (BLACK, J., dissenting). But the record conclusively shows that there was no such opportunity here. As I noted above, once the officers had observed Vale's conduct in front of the house they had probable cause to believe that a felony had been committed and that immediate action was necessary. At no time after the events in front of Mrs. Vale's house would it have been prudent for the officers to leave the house in order to secure a warrant.

The Court asserts, however, that because the police obtained two warrants for Vale's arrest there is "no reason . . . to suppose that it was impracticable for them to obtain a search warrant as well." The difficulty is that the two arrest warrants on which the Court seems to rely so heavily were not issued because of any present misconduct of Vale's; they were issued because the bond had been increased for an earlier narcotics charge then pending against Vale. When the police came to arrest Vale, they knew only that his bond had been increased. There is nothing in the record to indicate that, absent the increased bond, there would have been probable cause for an arrest, much less a search. Probable cause for the search arose for the first time when the police observed the activity of Vale and Saucier in and around the house.

I do not suggest that all arrests necessarily provide the basis for a search of the arrestee's house. In this case there is far more than a mere street arrest. The police also observed Vale's use of the house as a base of operations for his commercial business, his attempt to

return hurriedly to the house on seeing the officers, and the apparent destruction of evidence by the man with whom Vale was dealing. Furthermore the police arrival and Vale's arrest were plainly visible to anyone within the house, and the police had every reason to believe that someone in the house was likely to destroy the contraband if the search were postponed.

This case raises most graphically the question how does a policeman protect evidence necessary to the State if he must leave the premises to get a warrant, allowing the evidence he seeks to be destroyed. The Court's answer to that question makes unnecessarily difficult the conviction of those who prey upon society.