■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOSE GONZALEZ, Appellant.— Judgment, Supreme Court, Bronx County rendered on April 19, 1971 affirmed. Concur — McGivern, J. P., Markewich, and Kupferman, JJ.; Kupferman, J., concurs in a memorandum and Nunez and Murphy, JJ., dissent in a memorandum by Murphy, J., as follows:

KUPFERMAN, J. (concurring): The judgment should be affirmed. As Justice Steuer aptly stated in *People* v. *Sullivan* (37 A D 2d 559, 562 [dissent], app. dsmd. 29 N Y 2d 937): " It is most discouraging to witness the release of a wholesale dealer in the drug poisoning a large sector of the community upon what is, at best, a hypertechnical view of the law and, at worst, what we believe a mistaken view of the defendant's rights. The safeguards of our system unfortunately make it difficult to apprehend and convict one who like this defendant, occupies a place in the drug traffic a step away from the ultimate consumer. While he is entitled to the protection of those safeguards, there appears to be no good reason why they should be extended by interpretation far beyond their salutary purposes for his benefit."

MURPHY, J. (dissenting): On October 28, 1970, the defendant was arrested for loitering. He was held a short time and then released. This was two weeks after an unnamed informer pointed out the defendant to officer Jones as being a dealer in narcotics. By coincidence the officer spoke to the informer who told him the defendant had been arrested and that it would be " the best time to go over to his (defendant's) house." Officer Jones went over and was able to purchase heroin from the defendant's girl friend, Rios, who was in the apartment. He then arrested the girl and took her to the bedroom where he also arrested a Luis Moran. He now handcuffed them together and took them to the front door and let his two fellow officers into the apartment. Rios and Moran were then taken back to the bedroom, sat on the bed and the police searched the apartment while waiting for defendant to arrive. Heroin and $543 were taken from the top of the dresser in the bedroom and milk powder from underneath the kitchen table and a suitcase containing heroin cutting paraphernalia from a closet. When the defendant arrived, 45 minutes later, he

was arrested for possession of the heroin in the apartment. He was searched and heroin found on his person. Defendant then allegedly stated that everything found in the search of the apartment belonged to him. After a hearing the motion to suppress the statements and the tangible evidence was denied; and after trial the defendant was convicted of criminal possession of a dangerous drug in the first degree and sentenced to 20 years to life, and of criminal possession in the third degree and sentenced to a concurrent indeterminate term of five years. The search without a warrant was improper. Under these facts a search may be made at the time of arrest only to protect the officer's safety and to protect evidence which might otherwise be destroyed. In *Chimel* v. *California,* (395 U. S. 752, 763) the court stated: "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." When arresting Rios and Moran the officer did not search and seize what was in their immediate control, but handcuffed them and took them to the front door. At this point they were in custody and removed from the immediate area under their control at arrest and accordingly a warrant was required to search the apartment. The search conducted was to obtain evidence, not to protect the evidence from being destroyed; and, consequently, violated the Fourth Amendment. The fact that Rios and Moran were in the apartment does not change the result as far as this defendant is concerned. As was held in *Alderman* v. *United States* (394 U. S. 165, 176–177): "If the police make an unwarranted search of a house and seize tangible property belonging to third parties * * * the home-owner may object to its use against him, not because he had any interest in the seized items as 'effects' protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house, which is itself expressly protested by the Fourth Amendment. Nothing seen or found on the premises may legally form the basis of an arrest or search warrant or for testimony at the homeowner's trial, since the prosecution would be using the fruits of a Fourth Amendment violation." The "plain view" doctrine does not apply here since there was no exigency requiring an immediate warrantless search. (*Coolidge* v. *New Hampshire,* 403 U. S. 443.) The time for the search ended with both occupants of the apartment handcuffed at the front door. The arrest of this defendant, then, was the product of an illegal search of the defendant's apartment. (*Vale* v. *Louisiana,* 399 U. S. 30; *Wong Sun* v. *United States,* 371 U. S. 471.) Since there is no probable cause then for the arrest of the defendant without the illegally obtained evidence, the physical evidence and the admissions which are subject to the same rules, should have been suppressed. It follows that the search of the defendant's person was also tainted for that was not pursuant to a lawful arrest. The suitcase in the closet and the milk powder under the kitchen table were not in "plain view" nor are they admissible by any standards, and the admissibility of these items alone

requires a new trial. It cannot be "harmless error" for it could have weighed heavily in the jury's determination. The court in its charge pointed out that since the heroin was found not on his person but in his apartment, that they would have to determine if "he knowingly and lawfully possess[ed] it." The court went on to charge that the paraphernalia "may be evidence tending to prove or disprove guilt, or innocence" and that they could disbelieve the officer's testimony as to the defendant's admissions; and if they did disbelieve the admissions they could determine his guilt or innocence of possession "based solely upon the inferences which arise from this defendant's tenancy and occupancy of the apartment." Since the jury could have arrived at its verdict two ways, and one way is clearly incorrect and there is no way of knowing how they came to their decision, the verdict must be set aside. The jury could have disbelieved the admission that it all belonged to him and found that all the paraphernalia indicated the defendant had the narcotics in the apartment. Without the paraphernalia and the milk sugar, on the other hand, there is not enough in the record to convict him in the absence of the admission. I do not find it necessary to consider defendant's contentions that he was "set up" for this arrest or that the sentence was excessive since, as stated, the search was illegal. Accordingly, I would reverse and dismiss the indictment. At the very least, the defendant would be entitled to a new trial on the alternate theories of possession that were charged.