**UNITED STATES of America, Plaintiff,**

v.

**Jose Garcia RODRIGUEZ, Juan Guilbe Irizarry, and Osvaldo Fariñas Milián, Defendants.**

**Crim. No. 80–57.**

United States District Court,
D. Puerto Rico.

May 28, 1980.

**16**

Jose A. Quiles, U. S. Atty., Hato Rey, P. R., for plaintiff.

David Román, San Juan, P. R., for defendants.

## DECISION AND ORDER

TORRUELLA, District Judge.

This case is before us upon Defendants' Motions to Suppress all evidence obtained from a search and seizure that took place in Room 360 of the Isla Verde Holiday Inn, Carolina, Puerto Rico, on January 29, 1980, on occasion of the arrest of herein Defendants. Codefendant Osvaldo Fariñas Milián further requests the suppression as evidence and the return to him of $37,960.00 seized during the warrantless search of Room 178 of the Isla Verde Holiday Inn on that same date. Plaintiff opposed Defendants' Motions to Suppress. The parties have filed a stipulation of facts to be considered by the Court in lieu of an evidentiary hearing.

The parties have also filed memoranda of law in support of their respective positions.

The stipulation of facts filed by the parties provides in relevant part as follows:

"1. On January 8, 1980 a Federal Grand Jury at San Juan, Puerto Rico, indicted Juan Guilbe Irizarry and Osvaldo Fariñas Milián for violations of Title 21, USC 841(a)(1) and 18 USC 2, Docket # 80–09. Arrest warrants were issued for their arrest.

"2. On January 29, 1980, a confidential informant of the Drug Enforcement Administration received information that Osvaldo Fariñas Milián was in Room 360 of the Isla Verde Holiday Inn, Carolina, Puerto Rico.

"3. At approximately 12:15 A.M., on January 29, 1980, DEA Agents, Bennie Swint and Fortunato Jorge, FBI Agents Paul Philip and José Torres and Puerto Rico Police Department Agents Lugo and Ortiz arrived at Room 360 of the Isla Verde Holiday Inn (hereinafter "the Hotel Room"), to execute the warrant of arrest on Osvaldo Fariñas Milián.

"4. DEA Agent Swint knocked on the door, identifying himself by saying in a loud voice 'Police, Open the Door.'

"5. DEA Agent Swint then observed through the glass window of the Hotel Room and through a parted curtain that a male, who was wearing no shirt reached into a handbag and extracted what appeared to be a revolver. Agent Swint did not know the identity of the suspect.

"6. DEA Agent Swint notified the other officers that he had seen a gun in the hands of a male in the room, and they took cover.

"7. DEA Agent Swint again in a loud voice said 'Police, Open the Door.'

"8. Approximately three minutes later, the man observed by Agent Swint to have reached what appeared to be a revolver, opened the door to the Hotel Room and came out dressed with his hands up. The man was later identified as Juan Guilbe Irizarry, for whom an arrest warrant was outstanding.

"9. After Guilbe exited the Hotel Room, he was followed by José A. García Rodríguez and Osvaldo Fariñas Milián.

"10. The three suspects were placed under arrest and restrained outside the Hotel Room, during which DEA Agent Swint entered the Hotel Room and checked out the room and adjacent bathroom for other persons.

"11. While in the bathroom, DEA Agent Swint observed particles in the bottom of the bathtub. These particles were later identified as marihuana residue.

"12. While Agent Swint was in the bathroom, the other five law enforcement officers completed their arrests and search of the suspect and they all entered the Hotel Room.

"13. DEA Agent Swint could not find the gun in the Hotel Room and was advised by the other officers that no weapons were found on the suspects.

"14. After Agent Swint left the bathroom, and the suspects were seated on the bed, FBI Agent, Paul R. Philip entered the bathroom, to look around.

"15. Shortly after entering the bathroom, Agent Philip observed a misplaced ceiling partition in the bathroom's false or drop ceiling.

"16. Agent Philip proceeded to stand on the toilet and stick his head into the opening created by the misplaced panel. He observed the shadow of something lying on the partition within reach of the opening.

"17. Agent Philip reached into the ceiling and extracted a bag containing a powdered substance, shown later to be 3½ ounces of cocaine, a small quantity of marihuana wrapped in a brown bag, and three fully loaded firearms—a .45 caliber pistol, a .38 Special Revolver and a .38 caliber revolver, all of which he seized.

"18. DEA Agent Swint also observed and seized two (2) cigarrette butts from an ashtray located on top of a night table of the Hotel Room which butts were later determined to contain marihuana residue. The following is a list of objects seized from the Hotel Room:

"1. One loaded 45 caliber pistol, DE-TONICS, Serial # 14492.

"2. One fully loaded 38 special revolver COLT, Serial # CO132.

"3. One fully loaded 38 caliber COLT, No Serial Number.

"4. 131 grms (gross weight) of cocaine.

"5. 58.5 grams, gross, of marihuana, found in ceiling.

"6. 25.1 grams, gross, of marihuana, found in ceiling.

"7. Two cigarrette butts containing marihuana.

"8. Marihuana residue found in bathtub of hotel room.

"19. The suspects were then advised of their rights by DEA Agent Jorge in Spanish and taken to the DEA office.

"20. On the same date, DEA Agent Swint appeared before U. S. Magistrate Dennis A. Simonpietri and swore to a complaint charging Fariñas, Guilbe and García with violation of 21 USC 841(a)(1), 844 and 18 USC 2. Bond was set and the defendants turned over to the U. S. Marshal.

"21. On February 13, 1980, a preliminary hearing was held before U. S. Magistrate Dennis Simonpietri who found probable cause against the defendants but refused to pass upon the admissibility of the evidence seized by the Government.

"22. On February 20, 1980, the Grand Jury returned an Indictment against the defendants for violations of 18 USC and 924(c)(2) and 21 USC 841(a)(1), 8441 firearms and controlled substance statutes.

"23. The Hotel Room was registered to defendant Juan Guilbe Irizarry.

"24. None of the defendants consented to a search of the Hotel Room.

"25. There was an Assistant U. S. Attorney on duty on January 29, 1980."

No reference is made in the stipulation to a search and seizure in Room 178 of the Isla Verde Holiday Inn. Therefore, such part of codefendant Osvaldo Fariñas Milián's Motion is hereby DENIED for lack of evidence.

Defendants alleged that the warrantless search and seizure that took place in Room 360 of the Isla Verde Holiday Inn violates the Fourth Amendment of the United States Constitution. Plaintiff seeks to uphold the validity of said search and seizure on the grounds that it was incidental to the arrest, that there were present exigent circumstances that justified it, and that some of the evidence seized was in plain view.

■ The Fourth Amendment protects persons against unreasonable searches and seizures. It is the established rule, and Plaintiff so concedes, that warrantless searches and seizures are *per se* unreasonable unless they fall within specifically recognized and well delineated exceptions or categories. *Arkansas v. Sanders*, 442 U.S. 753, 755–758, 99 S.Ct. 2586, 2588–2591, 61 L.Ed.2d 235 (1979); *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970) (warrantless search of a house); *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *United States v. Jeffers*, 342 U.S. 48, 51–52, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951) (warrantless search of a hotel room); *United States v. Zurosky*, 1st Cir., 614 F.2d 779, 784, 785 (1979); *United States v. Picariello*, 568 F.2d 222, 225 (1st Cir., 1978); W. Ringel, *Searches & Seizures, Arrests and Confessions*, secs. 167–167.02 (1972 and 1978 Cum.Supp.); 1 *Wharton's Criminal Procedure*, sec. 150 (12th ed. 1974); Wright, *Federal Practice and Procedure: Criminal* sec. 668 (1969 and 1979 Supp.).

■ "Exigent circumstances" constitute one of the exceptions that have been recognized to the general rule that a prior warrant is required for a search and seizure. *Mincey v. Arizona*, supra, at 392–393, 98 S.Ct. at 2413; *Vale v. Louisiana*, supra, at 34–35, 90 S.Ct. at 1971–72; *Warden v. Hayden*, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967); *United States v. Edwards*, 602 F.2d 458, 468 (1st Cir., 1979); *Hopkins v. State of Alabama*, 524 F.2d 473 (5th Cir., 1975); *United States*

*v. Blair*, 366 F.Supp. 1036, 1039–1040 (S.D. N.Y., 1973); *Ringel* supra, at sec. 167.01. Within the purview of the term "exigent circumstances" the courts have included a variety of situations. See, e. g., *Mincey v. Arizona*, supra, at 392–393, 98 S.Ct. at 2413; *Vale v. Louisiana*, supra, at 34–35, 90 S.Ct. at 1971–72.

■ In the case at bar it appears from the stipulation of facts that DEA Agent Swint, after knocking on the door of Room 360 and identifying himself in a loud voice, "observed through the glass window of the hotel room and through a parted curtain that a male, who was wearing no shirt reached into a handbag and extracted what appeared to be a revolver." (Stipulation of facts, par. 5). Although the man (who was later identified as Juan Guilbe Irizarry) and the other two herein codefendants came out of the room and surrendered themselves voluntarily, there was still the danger that other persons might have remained in the room and that these persons might have been armed. The need to protect the lives of the agents or of other persons constituted "exigent circumstances" that justified the search of the room in order to determine if there were weapons or other persons in it. See *Warden v. Hayden*, supra; *McGeehan v. Wainwright*, 526 F.2d 397, 398–400 (5th Cir. 1976), cert. denied 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823; *United States v. Blake*, 484 F.2d 50 (8th Cir., 1973), cert. denied 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669; *Hopkins v. State of Alabama*, supra; *United States v. Broomfield*, 336 F.Supp. 179, 183–189 (E.D. Mich., 1972). As the Court stated in *Hopkins v. State of Alabama*, supra, at 475:

"The immediate need to ensure that no one remained in the house preparing to fire the yet unfounded weapon obviously justified this warrantless search. 'The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others.' *Warden v. Hayden*, 387 US. 294, 298–99, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967); accord, *McDonald v. United*

*States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153, 158 (1948). As in *Hayden*, "Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that [others were not present] and that the police had control of all weapons which could be used against them . . . .' The gun seized during the search, therefore, was properly admitted into evidence."

We hold, therefore, that the warrantless search and seizure that took place in Room 360 was justified by "exigent circumstances."

For the foregoing reasons Defendants' Motions for Suppression are hereby DENIED.

IT IS SO ORDERED.