**Sandra June CAMMACK and Robert Thomas Cammack, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–89–01123–CR, 01–89–01090–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 11, 1991.

Lawrence T. Newman, Houston, for appellants.

John B. Holmes, Harris Co. Dist. Atty., Calvin Hartman, Asst. Harris Co. Dist. Atty., for appellee.

Before DUNN, COHEN and HUGHES, JJ.

## OPINION

DUNN, Justice.

Appellant, Robert Thomas Cammack ("Robert"), pled guilty, and appellant, Sandra June Cammack ("Sandra"), pled no contest, to possession of a controlled substance, methamphetamine, weighing more than 28 grams but less than 400 grams. The trial court followed the State's agreed recommendations on punishment, convicted appellants, and assessed their punishment at 15 years confinement and a $1,000 fine. We affirm.

On November 30, 1988, arson investigator, Hickman Garrett, investigated a fire in progress at an apartment complex where appellants lived in Pasadena, Texas. Garrett testified that Sandra approached him at the scene of the fire, and asked him to go into appellants' apartment to retrieve approximately $2,000 in cash. Garrett testified that another man, other than Robert, also approached him, and asked Garrett to retrieve $8,000 in cash from the apartment. Sandra told Garrett to look under the bed in the master bedroom on the left hand side of the floor. The other man told Garrett to pick up a shaving kit on the top of a bookcase headboard on the right hand side of the bed.

Garrett went into the smoke filled apartment to look for the items that Sandra and the other man requested. The shaving kit was beginning to melt when Garrett found it. When Garrett opened the shaving kit to make sure it was the right one, he found the money along with some syringes. Garrett saw another bag, with the butt end of a pistol sticking out of it, stuck underneath the shaving kit. Garrett formed the opinion that some type of drug activity had been occurring at the apartment based on his observation of the cash, syringes, and the pistol. Garrett left the items in the apartment, and called the narcotics division to come to the scene to investigate.

Garrett also testified that because of the fire, there would not have been enough time to have obtained a search warrant. He also testified that he would not have gone into the apartment when he did except for the requests of Sandra and the other man.

The narcotics officers, King and Bittick, arrived at the scene within 10 minutes of Garrett's call. When they arrived, the apartment was smoke filled, and pieces of the ceiling were collapsing into the apartment. Garrett told the officers that appellants lived at the apartment, and described

the items he observed inside the apartment. Bittick recognized appellants' names because he had previously arrested them for manufacturing methamphetamine, at which time they also had in their possession dynamite blasting caps.

King testified he felt he had probable cause to search the apartment, and any evidence inside the apartment would have been destroyed by the fire during the one and one-half hours it would have taken him to get a search warrant. The narcotics officers searched the apartment for approximately 15 minutes, and found drugs. They had to discontinue the search when a ceiling collapsed and conditions became too dangerous to continue the search.

■ Appellants' first point of error asserts that the trial court erred in denying their motions to suppress the drugs found in appellants' apartment.

The trial court ruled that the search was reasonable under the circumstances based upon the exigency of the circumstances.

Relying on *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), appellants argue that Garrett's initial warrantless entry into the apartment "was a specific search for evidence of criminal activity other than the cause of the fire and was based upon a hunch." In *Tyler*, the court held that a warrantless entry into a burning building to put out the fire and determine its cause is constitutional, and that a warrantless seizure of evidence of criminal activity in plain view, while inspecting the building for these purposes, is also constitutional. 436 U.S. at 509, 98 S.Ct. at 1949. Appellants also argue that Garrett exceeded the scope of his investigation when he called the narcotics officers to investigate.

The trial judge is the sole judge of the credibility of witnesses on a pretrial motion to suppress, and the findings of the trial court will not be disturbed absent an abuse of discretion. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Crim.App.1986).

1. Appellants do not claim that Sandra or the other man lacked the authority to allow Garrett

Garrett testified that Sandra and the other man asked him to go into the burning apartment to retrieve their money, and that he would not have gone into the apartment when he did except for their requests. He also testified that once he observed the money, syringes, and the gun, he left the items in place and called the narcotics division.

Based on this testimony, the trial court was entitled to find that Garrett's initial warrantless entry into the apartment was not for the purpose of investigating the cause of the fire or searching the apartment for drugs. The trial court was entitled to find that Garrett's initial entry into the apartment was pursuant to Sandra's and the man's valid consent to search for their money. *See United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) (consent to a warrantless search by one who possesses common authority or other sufficient relationship to the premises sought to be inspected is valid as against the absent, nonconsenting person with whom that authority is shared); *Becknell v. State*, 720 S.W.2d 526, 528 (Tex.Crim.App.[Panel Op.] 1986) (same).[1]

Thus, Garrett's observation of the money, syringes, and the gun cannot form the basis of any illegal search and seizure because he observed these items as a result of Sandra's and the other man's valid consent to go into the apartment and retrieve their money, and Garrett did not seize these items. In addition, Garrett's calling of the narcotics officers to come out to the scene to investigate cannot form the basis of any illegal search and seizure because merely calling the officers to come out to the scene to investigate does not involve a search or a seizure. Appellants cite no authority that it does. TEX.R.APP.P. 74(f). Therefore, *Tyler* does not apply.

■ Having decided that Garrett's actions cannot form the basis of any illegal search and seizure, the question is whether King and Bittick had probable cause to search the apartment for evidence of crimi-

into the apartment to retrieve their items.

nal activity, and whether their warrantless search of the apartment was justified by exigent circumstances. *See Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970) (the State has the burden of showing an exceptional situation justifying a warrantless search of a dwelling, notwithstanding the existence of probable cause to conduct the search); *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Crim.App. 1976) (one basic exception to the warrant requirement is a search based on probable cause with exigent circumstances).

With respect to the second question, the trial court was entitled to find that the warrantless search by King and Bittick was justified by exigent circumstances, based on the testimony at the suppression hearing that any evidence inside the apartment would have been destroyed by the fire during the time it would have taken to have obtained a search warrant. *See Vale*, 399 U.S. at 35, 90 S.Ct. at 1972 (exigency exists where the goods to be seized are in the process of destruction). In addition, Bittick's knowledge that appellants had previously been arrested and possessed dynamite blasting caps together with the fact that their apartment was on fire, provided another exigency. The exigency requirement is satisfied in this case.

█ The next question is whether King and Bittick had probable cause to search the apartment for evidence of criminal activity based on the totality of the circumstances that existed at the time of the search. *See Illinois v. Gates*, 462 U.S. 213, 241, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983) (totality of the circumstances analysis applies to determining probable cause for the issuance of a search warrant); *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988) (the totality of the circumstances approach applies to warrantless arrests and searches, and the duty of the reviewing court is to look to the totality of the circumstances to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned action).

The State argues that King and Bittick had probable cause to believe there was evidence of a crime in appellants' apartment, based on the information Garrett furnished them coupled with their prior knowledge of appellants' drug related history.

Without citation to any authority, appellants argue that probable cause must be determined by what Garrett knew at the time he called the narcotics officers; not what the narcotics officers knew after they arrived at the scene. They further argue that Bittick's knowledge, that appellants had previously been arrested for manufacturing methamphetamine and they possessed dynamite blasting caps, cannot be used in determining probable cause because this information was not known when the decision to search the apartment for narcotics was made.

We disagree. If appellants' claim is that Garrett's search of the apartment for drugs was not based on probable cause, because Garrett did not possess the knowledge about appellants that Bittick possessed, this claim is without merit because we have already determined that the trial court was entitled to find that Garrett's actions did not constitute a search of the apartment for drugs.

If appellants' claim is that King and Bittick had already decided to search the apartment prior to learning from Garrett that appellants lived there, this claim is also without merit because the trial court was entitled to find, based on the evidence presented at the suppression hearing, that the decision to search appellants' apartment was not made until after King and Bittick had arrived at the scene and spoke to Garrett, and Garrett told them what he observed inside the apartment and that appellants lived there. In addition, we are required to look at the totality of the circumstances at the time of the search. *Eisenhauer*, 754 S.W.2d at 164.

We agree with the State that, under the totality of the circumstances, probable cause existed for King and Bittick to search appellant's apartment based on the information furnished to them by Garrett coupled with their prior knowledge of ap-

pellants' drug activities. *See United States v. Mendenhall,* 446 U.S. 544, 563–64, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980) (among the circumstances that can give rise to reasonable suspicion to briefly detain and question an individual is an officer's assessment of the facts in light of his experience, including the officer's knowledge of the methods used in recent criminal activity and the characteristics of persons engaged in such illegal practices); *Miller v. State,* 458 S.W.2d 680, 683 (Tex.Crim.App. 1970) (officers' prior knowledge of defendant as a marihuana user was one circumstance to consider in determining whether probable cause existed for defendant's warrantless arrest for possession of marihuana).

Based on the foregoing, we hold the trial court was entitled to find that probable cause and exigent circumstances justified the warrantless search of appellants' apartment, and that, under the totality of the circumstances, the narcotics officers' conduct was reasonable.

Appellants' first point of error is overruled.

Appellant, Sandra, asserts, as her second point of error, that the trial court erred in refusing to hear her motion to quash the indictment, and in failing to quash the indictment.[2]

She concedes in her appellate brief, however, that she cannot argue this point "in good faith." Sandra's second point of error presents nothing for review. Tex.R. App.P. 74(f).

If Sandra's claim is that the trial court lacked jurisdiction over her because she only committed a misdemeanor, she is mistaken because the offense for which she was convicted is a felony.[3]

**2.** Robert's brief does not present a point of error on the trial court's failure to quash the indictment. Therefore, he presents nothing for review on this issue. *See* Tex.R.App.P. 74(d).

**3.** Act of September 1, 1987, 70th Leg., R.S., ch. 666, § 3(6), 1987 Tex.Gen.Laws 2481, 2484, *amended by* Act of September 1, 1989, 71st Leg., R.S., ch. 1100, § 5.02(n), 1989 Tex.Gen.Laws

The second point of error is overruled. The judgments are affirmed.

4538, 4541. *See* Tex.Health & Safety Code Ann. § 481.102 (Vernon Pamph.1991).

Act of August 29, 1983, 68th Leg., R.S., ch. 425, § 9(c), 1983 Tex.Gen.Laws 2361, 2379–80, *amended by* Act of September 1, 1989, 71st Leg., R.S., ch. 678, § 1, section 481.115, 1989 Tex.Gen. Laws 2936–37, 3165. *See* Tex.Health & Safety Code Ann. § 481.115 (Vernon Pamph.1991).