Filed 3/27/13  P. v. Sosa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CARLOS SOSA,<br><br>    Defendant and Appellant. | G047054<br><br>(Super. Ct. No. 10WF0934)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King and Gregg L. Prickett, Judges.  Reversed with directions.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Carlos Sosa of possession of methamphetamine for sale (Health & Saf. Code, § 11378) to benefit a criminal street gang (Pen. Code, § 186.22, subd. (b)) and active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)).  Sosa contends deputies violated his Fourth Amendment rights by entering his room without a warrant, consent, or other legal justification.  The trial court denied Sosa's motion to suppress evidence, finding the officers were authorized to conduct a protective sweep of the residence when they observed drugs and other evidence in plain view.  We agree the court should have granted the suppression motion because the prosecution failed to present facts to support the deputies' suspicion it was necessary to search Sosa's residence for armed individuals posing a threat to their safety.  We also accept the Attorney General's concession insufficient evidence supported Sosa's active gang participation conviction based on the Supreme Court's recent decision in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*).  Accordingly, we reverse the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

Sosa moved to suppress evidence at his February 15, 2011 preliminary hearing.  At the hearing, Orange County Deputy Sheriff James Karr testified that on April 15, 2010, he was assigned to a gang enforcement team working in Stanton.  Karr and nine other officers from various agencies, wearing marked police vests and carrying firearms,  arrived at Sosa's residence to conduct a probation compliance check on Sosa's brother, Angel.  Angel had agreed to submit to searches and seizures as a condition of his probation.

Karr knocked at the front door and announced the officers intended to conduct a probation search.  Sosa answered the door and Karr announced the officers were there to check if Angel Sosa was complying with his probation conditions.  The officers entered without asking permission and immediately began a protective sweep to make sure they "were safe while [they] were conducting the check."

2

As part of the sweep, Karr walked down a hallway leading to the bedrooms. Santiago Chavez and Juan Gomez occupied a bedroom on the left. Karr did not recall if other officers opened the door to this bedroom or if the door was already open. Karr entered and patted down both men.

Karr left this room and continued down the hallway. He smelled "a strong odor of marijuana" coming from the closed but unlocked door of the northwest corner bedroom. Karr opened the door, entered the room, and encountered Linda Le standing in the middle of the room. Karr observed a mature, potted 12-inch tall marijuana plant on a stand in a corner of the room. The closet door was open. Karr saw a small fireproof safe atop a dresser in the closet. The door of the safe was open, and Karr spotted over $700 in cash, and two clear plastic sandwich-style bags inside. A black digital scale with white residue on it sat next to the safe.

The sandwich bags contained a white crystalline substance, which subsequent testing revealed as methamphetamine. One bag weighed 1 gram, the other 1.5 grams. Karr found torn-off bits of plastic shopping bags strewn about the room that Karr believed were used to package drugs. The safe contained a paper driver's license permit with Sosa's name on it, and four $512 unemployment checks in his name dated between December 19, 2009 and January 30, 2010. The top dresser drawer, open about three inches, held another scale with white residue. Karr found a glass methamphetamine smoking pipe on a storage shelf on the east wall of the bedroom. Karr also discovered notebooks, letters, and other papers containing indicia of affiliation with the Crow Village criminal street gang.

Karr interviewed Sosa after advising him of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436. Sosa, who moved into the house in 2000, acknowledged associating with various "active participants and/or members" of the Crow Street gang around his age. Although he did not have a medical marijuana card, he bought the marijuana plant at a dispensary for $20. He admitted the drugs and other paraphernalia

3

belonged to him, but claimed he kept the methamphetamine for personal use and denied selling the drug. He explained he used the scales to make sure he did not "get ripped off," but declined to explain where he got the money found in his safe. His cell phone contained photos of drugs, guns, and gang members, and his text messages suggested he was selling drugs.

Asked where Angel was "during this time," i.e., at the time Karr entered Sosa's bedroom as part of the protective sweep, Karr responded Angel "ended up being in the family room of the residence." According to Karr, five people lived in the house. Angel slept on the couch in the family room. Everyone else, including Sosa, had their own bedroom. It was 30 to 35 feet from Angel's couch area to Sosa's bedroom. It is unclear when Karr acquired his information concerning the living arrangements for Angel and the other residents.[1]

The preliminary hearing magistrate denied Sosa's suppression motion without express factual findings. The trial court denied his renewed suppression motion after the parties submitted the matter on the preliminary hearing transcript.

II

DISCUSSION

A.  *The Trial Court Erred in Denying the Suppression Motion*

Sosa contends the deputies violated his Fourth Amendment rights when they entered his room without a warrant, consent, or other legal justification. The Attorney General argues the risk of danger to deputies conducting a probation check justified a protective sweep of the residence, including Sosa's room.

---

[1]     Deputy Jeffrey Jensen testified at the preliminary hearing as a gang expert concerning the Crow Village criminal street gang and various aspects of gang culture. Based on evidence recovered from Sosa's room, Jensen opined he was "an active participant and/or member of Crow Village."

The standard of appellate review on a suppression motion is well established.  We defer to the magistrate's express or implied factual findings if supported by substantial evidence, but with those findings in mind, we independently determine the legality of the search under Fourth Amendment principles.  (*People v. Glaser* (1995) 11 Cal.4th 354, 362; see also *People v. Woods* (1999) 21 Cal.4th 668, 674 [legality of police conduct evaluated under federal constitutional standards pursuant to article I, section 28, subdivision (d) of the California Constitution].)  "'Searches and seizures inside a home without a warrant are presumptively unreasonable.' [Citation.]"  (*People v. Troyer* (2011) 51 Cal.4th 599, 602.)  The People bore the burden below of demonstrating the reasonableness of the search under a recognized exception to the general proscription against warrantless searches.  (*Vale v. Louisiana* (1969) 399 U.S. 30, 34; *People v. James* (1977) 19 Cal.3d 99, 106.)

The Attorney General relies on *Maryland v. Buie* (1990) 494 U.S. 325 (*Buie*) and *People v. Ledesma* (2003) 106 Cal.App.4th 857 (*Ledesma*), to justify the protective sweep of defendant's residence.  In *Buie*, six or seven police officers arrived at the defendant's residence to serve an arrest warrant for a reported robbery of a pizza restaurant by two men, one of whom wore a red running suit.  Once inside, officers fanned out through the first and second floor, while a single officer shouted for anyone in the basement to come out.  The officer arrested and handcuffed the defendant as he emerged from the basement, while another officer entered the basement "in case there was someone else" hiding, and spotted a red running suit in plain view.  (*Buie, supra*, at p. 328.)

*Buie* upheld the protective sweep, which the court described as a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.  It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  (*Buie, supra,* 494 U.S. at p. 327.)  The officers, however, could not initiate a protective sweep on a mere hunch, but only if

5

officers have "'a reasonable belief based on "specific and articulable facts . . .reasonably warranted[ed]" the officer in believing,' [citation] that the area [to be] swept harbors an individual posing a danger to the officers or others." (*Id.* at p. 327.)  In requiring a reasonable and "individualized suspicion" to justify a protective sweep, the court rejected "[t]he State's argument that no level of objective justification should be required because of 'the danger that inheres in the in-home arrest for a violent crime.'" (*Id*. at p. 334, fn. 2.)

In *Ledesma, supra,* 106 Cal.App.4th 857, the court extended the *Buie* rationale to probation searches.  There, an officer conducting a narcotics investigation contacted a woman named Barajas, whom the officer knew to be a twice-convicted drug user on probation with a search and seizure condition.  (*Id.* at p. 861.)  Barajas provided her current address, which the officer confirmed through the department's records division.  He took Barajas to the address to conduct a probation search, but they were unable to enter the house.  The next afternoon, officers returned to the residence without Barajas to conduct a probation search.  The officers saw two cars parked in front of the residence and a trailer parked in the driveway.  The defendant, who appeared to be under the influence of drugs, let the officers into the residence.  The officers informed the defendant they intended to conduct a probation search on Barajas.  The defendant replied she was not there, had not been there in a while, and did not always stay at the residence. He nonetheless escorted the officers to the northeast bedroom Barajas used when she stayed in the home.  (*Ibid.*)

Before searching Barajas's bedroom, the officer asked if anyone else was in the residence.  Although the defendant claimed no one else was there, the officer announced he would perform a security check for officer safety so "'nobody [would] sneak up behind [them] while [they] had [their] heads buried in a dresser drawer looking for items within [Barajas's] probation terms.'" (*Ledesma, supra,* 106 Cal.App.4th at p. 861.)  The defendant escorted the officers to his bedroom.  The officer, while looking

6

to the right of the bed and inside an open closet observed the defendant walk to a wooden dresser in the room, grab what appeared to be several bindles of methamphetamine, and place them into the dresser drawer. The officer also spotted a roll of money on the dresser top and formed the opinion, based on the large sum of money and the large quantity of methamphetamine, that the defendant was selling controlled substances. (*Ibid.*) The defendant admitted the substance he placed in the drawer was "crank." (*Id.* at p. 862.) The officer arrested the defendant and obtained the defendant's consent to search, which revealed drugs and other evidence of drug trafficking. (*Ibid.*)

The *Ledesma* court concluded a protective sweep was justified because the officers harbored a reasonable basis for believing other potentially dangerous persons may have been inside the probationer's residence. The court rejected "the notion that a protective sweep is *always* justified prior to a search" (*Ledesma, supra,* 106 Cal.App.4th at p. 864), explaining "'the mere abstract theoretical "possibility" that someone dangerous might be inside a residence does not constitute "articulable facts" justifying a protective sweep. Where an officer has no information about the presence of dangerous individuals, the courts have consistently refused to permit this lack of information to support a "possibility of peril justifying a sweep." [Citations.]'" (*Id*. at p. 866.)

*Ledesma*, however, found, "the information known to the investigating officers, filtered through the lens of their experience and training, justified the protective sweep undertaken." (*Ledesma, supra,* 106 Cal.App.4th at p. 865.) Investigators knew the probationer Barajas was a convicted drug user, and reasonably surmised the defendant shared the residence with her. Because the defendant appeared to be under the influence of drugs, the officers reasonably concluded the residence was the site of ongoing narcotics activity. Based on their experience and training, the narcotics investigators knew that "drug users and those who associate with them are apt to have weapons in the house and have transients 'in and out of their houses at all times of the

7

day or night.'" (*Id*. at p. 865.) The presence of two cars parked outside the residence buttressed the officer's opinion others were inside the probationer's residence. (*Ibid*.)

Here, the Attorney General relies on *Ledesma* to justify the search of Sosa's room. She notes the house had multiple rooms and an unknown number of residents. The officers "could not have known how many people were in the house at the time, or whether any of the occupants posed a threat to their safety." She concludes "it [was] reasonable for officers to believe that there were multiple occupants of this residence, and that there was a need to determine which areas were under Angel Sosa's ownership or control. The officers, before conducting a compliance check of the probationer's residence, would reasonably want to ensure that no one in the house posed a threat to officer safety."

The Attorney General's argument offers nothing more than the theoretical possibility other unknown and dangerous persons might be in the residence, a standard flatly rejected in *Buie* and *Ledesma*. It is not enough that there may have been unknown persons in the residence. Under *Buie*, the officer must articulate facts supporting their suspicion the area to be swept harbors an individual or individuals *posing a danger* to the officer or others. (3 LaFave, Search and Seizure (4th ed. 2004) § 6.4(c), p. 377 [*Buie* requires a reasonable suspicion another person is in the premises *and* that the person is dangerous].) In *Buie*, two armed robbers were at large, but when only the defendant emerged from the basement, officers reasonably suspected the other robber could be hiding in the residence. (*Buie*, *supra*, 494 U.S. at p. 328.) In *Ledesma*, as discussed above, the criminal conduct underlying the probation search involved drugs, and the residence appeared to be the site of ongoing narcotics activity. (*Ledesma*, *supra*, 106 Cal.App.4th at pp. 865–866.) The court concluded firearms are one of the ""tools of the trade"" in "the narcotics business," explaining that drug users and those who associate with them are apt to have weapons in the house and have transients "'in and out of their house.'" (*Id*. at p. 865.) The officers had been to the residence before and

8

"'knew there was at least one other person who was around on occasion,'" which was corroborated to some extent by the presence of two cars located directly in front of the residence. (*Ibid.*)

Here, in contrast, the prosecution failed to present facts suggesting a comparable level of danger. Indeed, it is difficult to understand how the prosecution could have made such a weak showing despite the guidance *Buie* and *Ledesma* provided. For example, *Ledesma* emphasized "the type of criminal conduct underlying the arrest or search is significant in determining if a protective sweep is justified." (*Ledesma, supra,* 106 Cal.App.4th at p. 865.) But the prosecution failed to present any evidence concerning the nature of Angel Sosa's probation or his underlying offense. Nor was there evidence linking Carlos Sosa to narcotics trafficking, weapons, or the Crow Village gang. No evidence connected Sosa or the other residents to criminal activity or weapons, nor did the officers know of ongoing criminal activity at the house. To sanction a protective sweep under these circumstances would be to permit a protective sweep whenever officers entered a residence.

Several California cases following *Buie* illustrate the showing necessary to justify a protective sweep. In *People v. Ikeda* (2013) 213 Cal.App.4th 326, sheriff's deputies had information linking the defendant to the theft of a laptop computer and determined he was living at a motel, and changing rooms daily. He also left a room key for a woman who came and went. Based on his training and experience, the lead investigator believed the defendant's activity was consistent with someone selling narcotics. Deputies approached the room and heard two male voices inside. When deputies knocked and announced their presence, the defendant tried to flee out the sliding door to the parking lot. He admitted when apprehended there was a BB gun inside the room. (*Id.* at p. 330.) Based on multiple male voices, indications of drug trafficking, and the presence of a gun in the room, the appellate court concluded a reasonably prudent

9

officer would entertain a reasonable suspicion the room harbored a dangerous person or persons. (*Id.* at pp. 330-331.)

In *People v. Werner* (2012) 207 Cal.App.4th 1195, sheriff's deputies arrested the defendant outside his home for a domestic violence incident occurring earlier in the day. The defendant asked his roommate to get his shoes and keys. A deputy accompanied the roommate into the house and into the defendant's bedroom for officer safety reasons. The deputy discovered marijuana and illegal fireworks in plain view. (*Id.* at pp. 1198-1199.) The appellate court concluded the sweep was unjustified because there was no evidence the home harbored dangerous persons. The court noted there was no evidence connecting the roommate to criminal activity, nor were officers aware of any ongoing criminal activity at the house. (*Id.* at p. 1208.)

In *People v. Ormonde* (2006) 143 Cal.App.4th 282 (*Ormonde*), police officers responded to an apartment to investigate a domestic violence incident that had occurred at another location. They encountered the suspect, Olson, standing near a car about 10 feet from the open front door of the apartment. They detained Olson, who was argumentative and uncooperative, because they suspected he was involved in the incident and linked to the apartment. While Olson was being detained, one of the officers entered the apartment to see if anyone armed was inside the residence. He announced his presence, stepped a few feet into the apartment, and found the defendant, a woman and a young girl. They agreed to step outside to discuss Olson's connection to the apartment. The officer allowed the woman and the girl to return to the apartment while he interviewed the defendant. Eventually, the officer reentered the apartment and discovered drugs in the defendant's bedroom. (*Id.* at pp. 286-288)

The *Ormonde* court concluded the prosecution failed to justify the search as a protective sweep. The court explained the investigating officer lacked reasonable suspicion to believe there were potentially dangerous persons inside the defendant's apartment. (*Ormonde, supra,* 143 Cal.App.4th at p. 294.) The court recognized domestic

violence situations may be dangerous, but it is not enough "that the police were genuinely apprehensive of danger based on past experience with domestic battery situations . . . ." (*Id.* at p. 295.) Under these circumstances, the facts known to the officer did not justify a reasonable suspicion the apartment harbored persons posing a danger to those on the arrest scene.

In *People v. Celis* (2004) 33 Cal.4th 667, police officers suspected the defendant was part of a statewide drug trafficking ring that concealed and transported drugs inside large truck tires. Investigators followed the defendant to his home and observed him rolling a large inflated truck tire to an accomplice waiting in a truck parked in an alley. Officers detained the defendant and his accomplice at gunpoint. Knowing the defendant lived with his wife and possibly a male juvenile (*id.* at pp. 671-673), officers entered the defendant's home to check if anyone else was inside who might endanger them. (*Id.* at p. 672.) Investigators did not find anyone inside, but found packages of cocaine stored in a wooden box large enough to conceal a person. (*Id.* at pp. 672-273.)

The Supreme Court concluded the officers lacked a factual basis to support a reasonable suspicion that persons posing a danger to the officers were inside the defendant's residence. The court noted there was no evidence the defendant and his accomplice were armed, and investigators found no weapons in earlier investigations of the drug ring. (*Celis, supra,* 33 Cal.4th at pp. 672, 679.)

Police work is an often dangerous enterprise, and officers should not have to take unnecessary risks in the performance of their duties. But a generalized concern for officer safety does not justify a protective sweep of an entire house. (*Buie, supra,* 494 U.S. at p. 332; *Celis, supra,* 33 Cal.4th at p. 678; *U.S. v. Murphy* (9th Cir. 2008) 516 F.3d 1117, 1121 [police must comply with the warrant requirement for search of the premises beyond that authorized by the exigencies or other justifications].) *Buie* and its progeny, including *Ledesma*, do not authorize a routine protective sweep of a residence

11

preceding or accompanying a probation search divorced from a specific and articulated safety rationale. As noted above, the prosecution presented no evidence apart from that discovered during the search that linked Angel, Sosa, or the other residents to gangs, narcotics trafficking, or weapons, nor did the officers state they knew of ongoing criminal activity at the house. We may not infer a gang connection simply because the residence was located in Crow Village territory or because gang officers were involved in Angel's probation search. The odor of marijuana, whether burning or fresh, did not suffice to raise a reasonable suspicion there was someone *dangerous* inside Sosa's bedroom. (See *People v. Torres* (2012) 205 Cal.App.4th 989, 995 [protective sweep rationale did not justify warrantless entry because it was "'conjecture to conclude that there was enough [marijuana] to constitute a jailable offense'"].) The prosecution here simply failed to present evidence supporting an opinion other persons in the house posed a danger to the officers sufficient to permit the intrusion of a protective sweep. Because the Attorney General has pointed to no other justification for the search, we conclude the trial court erred in denying Sosa's motion to suppress evidence.

B.   *Insufficient Evidence Sosa Actively Participated in a Criminal Street Gang (Pen. Code, § 186.22, subd. (a))*

After the parties filed their appellate briefs, the California Supreme Court concluded a gang member acting alone, even on behalf of his gang, does not violate of Penal Code section 186.22, subdivision (a). (*Rodriguez, supra,* 55 Cal.4th 1125.) We invited the parties to submit supplemental letter briefs addressing *Rodriguez*'s application to this appeal. The Attorney General concedes no evidence shows Sosa acted with another in possessing a controlled substance for sale, the crime relied on by the prosecution to support the gang offense, and "*Rodriguez* dictates that there is insufficient evidence to support [the Pen. Code, § 186.22, subd. (a)] conviction" charged in count 2 of the information. We accept the concession and will direct the trial court to dismiss count 2.

## III

### DISPOSITION

The judgment is reversed and the cause remanded to the trial court with directions to grant Sosa's motion to suppress evidence.  The trial court is also directed to dismiss count 2 of the information charging Sosa with active participation in a criminal street gang.  (Pen. Code, § 186.22, subd. (a).)


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.