**Darren M. WAY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 06–CF–1084.

District of Columbia Court of Appeals.

Submitted May 27, 2009.
Decided Sept. 9, 2009.*

Joanne Vasco, Hyattsville, MD, appointed by the court, was on the brief for appellant.

Jeffrey A. Taylor, United States Attorney at the time the brief was filed, Roy W. McLeese III, Elizabeth Trosman, and Nicholas P. Coleman, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, KRAMER and OBERLY, Associate Judges.

KRAMER, Associate Judge:

Appellant Darren Way, a former police officer with the Metropolitan Transit Authority Police Department, who was convicted of four counts of second-degree sexual abuse stemming from an incident in which he engaged in sexual activity with a prostitute, argues that there was not sufficient evidence to support the conviction. We affirm.

At a jury trial held before the Honorable Erik P. Christian, the following evidence was presented. On June 26, 2005, nineteen-year-old Megan Vincent was working as a prostitute out of the Gallery Inn, a hotel located at 1850 Florida Avenue, Northwest. Vincent's pimp, David Anderson, had placed advertisements for her services, which included her cell phone number, on the Internet and in a local newspaper. Vincent received a phone call on her cell phone at about 3:30 p.m. from a man who said he would be arriving later that evening at the Gallery Inn. At about 11:30 p.m., Vincent was waiting outside the hotel when she received a call from the same man. As she answered the phone, she saw appellant, dressed in a full police uniform with a gun and handcuffs, peeking around the corner. He approached and asked to speak with Vincent in private.

---

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published at the request of the appellee with minor alterations.

Vincent "thought [she] was about to be arrested," and followed appellant around the corner. He asked Vincent if she was staying at the hotel, and Vincent asked whether he had a search warrant and if she was under arrest. Appellant responded that he did not have a search warrant and asked again to speak with Vincent in private. Vincent said that she was uncomfortable speaking in private, and that she preferred that they stay in a public area. Appellant continued to tell Vincent that he wanted to speak with her in private and told her that "he was interested in seeing [her]." Vincent explained that "when he said like see me, that's like very common lingo for tricks to use as far as they want a date. They want to see me. They want to set up an appointment, per se." Vincent testified that the conversation continued and that

> after a little bit more time, he, you know, asked me to go upstairs. And I said, no, I really don't feel comfortable. I don't feel comfortable going upstairs. Because in my mind, I knew something was a little bit off. There was not—he wasn't trying to arrest me. And I didn't know if he was going to try to do it upstairs.

Vincent was uncomfortable standing outside with a uniformed police officer, and ultimately told appellant that he could come inside.

After Vincent and appellant entered her room, she locked the door. Appellant ensured that the door was locked and began undressing himself and Vincent. Appellant asked Vincent if he had seen her before wearing a yellow bra, and Vincent realized that he had spoken to her while she was walking the streets and appellant was in a police van. Vincent testified that she asked appellant, "are you going to come in here and use your power against me.... I knew something here was off. I knew that something wasn't right." Appellant responded with a "no." Appellant told Vincent that he would take care of her afterwards. When Vincent asked if they were talking about money, appellant said "yes," although they did not discuss a specific amount of money. Vincent testified that she felt "very vulnerable" and "powerless over the situation." Appellant performed oral sex on Vincent, during which he inserted his finger into her anus. Vincent performed oral sex on appellant, and then they engaged in sexual intercourse. When asked why she did not run away, Vincent responded:

> I guess the only thing I am thinking is, he is an officer, you know, and he wasn't trying to conceal it or to hide it. He didn't come with me and, you know, try to deny the fact that he was law enforcement. So to run away from an officer, I have no idea what this man is going to do. I mean, he has the ultimate authority in this case. To run away from an officer sounds—it never—I just wouldn't have thought about just to run away.

After they had sex, when Vincent brought up money, appellant told her, "there is something you need to know about D.C. One, if I am in uniform and I give you money after we had sex, it is solicitation. And then he said welcome to D.C." Vincent was afraid that now that a police officer knew that she was prostituting, that he could "at any time ... just come and take advantage of the situation."[1]

Appellant was indicted on four counts of second-degree sexual abuse in violation of D.C.Code § 22–3003(1) (2001). Each count charged a separate sexual act: cunnilingus, anal penetration, fellatio, and vaginal intercourse. The jury found appellant guilty on all counts. Under § 22–3003(1),

---

1. Vincent took measures to ensure payment; for example, she told appellant that her father was a police sergeant and kept his keys when he left to get money to pay her.

a person commits second degree sexual abuse if he "engages in or causes another person to engage in or submit to a sexual act ... [b]y threatening or placing that other person in reasonable fear (other than by threatening or placing that other person in reasonable fear that any person will be subjected to death, bodily injury, or kidnapping)." In this case, the indictment charged that appellant caused Vincent to engage in sexual acts by placing her in reasonable fear of being arrested. Appellant does not dispute that he and Vincent engaged in sexual acts. He argues that there was not sufficient evidence that he caused Vincent to engage in sexual acts by placing her in reasonable fear of arrest.

Vincent's testimony revealed that from the moment she first encountered appellant on the night of June 26, 2005, she was afraid that he would arrest her. Vincent testified that she "thought [she] was about to be arrested," that she explicitly asked appellant if she was under arrest, that she did not feel comfortable going upstairs with him because she "didn't know if he was going to try to [arrest her] upstairs," and that once upstairs she asked appellant if he was going to "use [his] power against her." She further testified that while she felt "very vulnerable" and "powerless over the situation," it did not occur to her to run away because appellant was a police officer and she had "no idea what this man [was] going to do" since he had "the ultimate authority in this case." Based on Vincent's testimony, a jury could find that her fear of arrest was the only reason that she engaged in sexual acts with appellant. Given that appellant arrived at the Gallery Inn in his full police uniform and knew that Vincent was a prostitute, a jury could also find that her fear of arrest was reasonable. *See Martin v. State,* 113 Md. App. 190, 686 A.2d 1130, 1159 (Ct. Spec.App.1996) (finding that sexual offense defendant's "status as a uniformed and armed police officer was a very important factor that weighs heavily in favor of finding that [the victim's] fear was reasonably grounded."); *State v. Burke,* 522 A.2d 725, 734–35 (R.I.1987) (recognizing that where "defendant, a uniformed police officer armed with handcuffs and a gun, used his position of authority to intimidate an alcoholic young woman into performing oral sex upon him, [t]he defendant's position of authority, in and of itself, carries with it an implied threat."). The evidence was sufficient to show that Vincent engaged in sexual acts with appellant only because she had a reasonable fear of being arrested.

There was also evidence from which a reasonable fact-finder could conclude that appellant had the specific intent to obtain sex by placing Vincent in fear of arrest. Appellant showed up to his appointment with Vincent in his full uniform, although he could have expected that a prostitute would be fearful of a police officer. Although Vincent repeatedly stated that she did not want to go upstairs with him, appellant continued to pressure her until she agreed. When they went inside Vincent's room, appellant immediately began undressing them, without discussing a price or whether Vincent consented. Afterwards, appellant told Vincent that in the District of Columbia, police officers do not pay for sex. Viewing this evidence in the light most favorable to the government, as we must, the jury could reasonably conclude that appellant intentionally obtained sex from Vincent by intimidating her with the unspoken threat of arrest. Accordingly, the judgment is

*Affirmed.*