*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-817

STEVEN DAVIS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-542-13)

(Hon. John McCabe, Trial Judge)

(Submitted November 6, 2014                    Decided February 26, 2015)

*Thomas D. Engle* and *Sharon L. Burka* were on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Jay Apperson*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and THOMPSON, *Associate Judges*, and PRYOR, *Senior Judge*.

THOMPSON, *Associate Judge*:  After a bench trial, appellant Steven Davis was convicted of possession of a controlled substance (cocaine).  He argues on appeal that the trial court erred in denying his motion to suppress the two ziplock bags of cocaine found in his vehicle by a police officer who had entered the vehicle

in order to move it out of the way of traffic.  Because we conclude that the officer entered the vehicle as a reasonable exercise of his community caretaking function (and, as the trial court found, not in connection with a criminal investigation), and because the subsequent seizure was justified under the plain-view doctrine, we affirm.

## I.  Background

The government presented evidence at the suppression hearing that on the morning of January 9, 2013, Metropolitan Police Department (MPD) Officer Marcus Smith was flagged down by the property manager of the Benning Woods Apartments on 42nd Street, N.E.  The property manager reported that there were two unconscious people in a vehicle in the apartment parking lot.  Upon responding to the parking lot, Officer Smith observed a small SUV, with its engine running, parked in the middle of the parking lot, blocking other vehicles.  The officer explained that, because of where the SUV was parked, "nobody could come in or out of the parking spaces [on either side of the SUV] and nobody could come on or off the property."  The windows of the vehicle were rolled down.  The officer saw a woman sleeping in the vehicle's passenger seat and, in the driver's seat, a man — identified during the hearing as appellant — who was "unconscious" and

"slumped over" with his head on the steering wheel.[1] Appellant's eyes were "kind of open but he didn't appear to be breathing."[2] Officer Smith attempted to awaken appellant by repeatedly calling out to him or yelling for "a minute or so." When that proved unsuccessful, the officer radioed for an ambulance.[3] An ambulance and fire truck responded in about ten minutes, and, apparently at the sound of the sirens, the woman in the SUV woke up, disoriented. Emergency medical technicians (EMTs) approached the SUV, opened the doors, shook appellant, and assisted appellant and the passenger in getting out of the vehicle. The EMTs "wanted to check [the] vital signs" of appellant and the passenger. Appellant was "still in a state of unconsciousness" and was still slumped over the steering wheel and "out of it" when the EMTs arrived, but "started to come to" when the EMTs "went to move him." Officer Smith testified that appellant "had to be assisted" to get out of the SUV and required assistance to walk over to the ambulance, but

---

[1] There were no other passengers in the vehicle.

[2] Officer Smith acknowledged on cross-examination that he saw no blood or vomit in the car, no signs that the car had been in an accident, and no physical objects that suggested foul play. He testified, however, that he had been a narcotics officer for years and that he told the dispatcher whom he radioed for assistance that the individuals in the vehicle "appeared high off some narcotic, probably heroin[.]" Appellant's hand was "large" and looked like the hand of someone who had "just finished using heroin." Officer Smith "r[a]n the tag" of the SUV and found no problem with it and no outstanding warrants.

[3] Officer Smith also radioed for a backup unit. By the time of appellant's eventual arrest, there were four officers on the scene, including Officer Smith.

remained standing without assistance outside the ambulance while the EMTs attended to him.

Officer Smith testified that he "needed to identify" the occupants of the vehicle and "needed . . . some ID." He further testified that, while the EMTs were attending to appellant, he "was going to secure [the] vehicle because it was . . . in the middle of the parking lot . . . literally blocking cars[.]" He testified at first that it was "while [he] was turning the vehicle off" that he "immediately" noticed two blue, ziplock bags containing a white rock-like substance on the driver's side floorboard, just in front of the pedals. At other points in his testimony, he stated that he was "going to move the car out of the middle of the parkway," and that "as soon as [he] got in" the vehicle as if to drive it, or as he was "about to get in the vehicle and move it . . . was maybe opening the door and about to get in," the blue color of the ziplock bags on the dark floorboard drew his attention to the bags.[4] He recovered the bags and field-tested the white substance, which tested positive for cocaine. Thereafter — about 15 or 20 minutes after the EMTs helped appellant out of his vehicle — Officer Smith placed appellant under arrest and walked him to the police vehicle. Appellant did not require assistance to walk to the squad car. The

_____

[4] Officer Smith testified that he did eventually move the vehicle to a parking space after recovering the narcotics.

woman passenger "didn't leave the scene with the EMT's [sic]." The SUV was "left . . . on the scene," and appellant's wife "later on came to pick . . . up" the SUV keys (which Officer Smith had "put . . . on the property book") from Officer Smith.

Appellant provided a different account during his suppression-hearing testimony. He testified that he had fallen asleep while waiting for a young lady "to come downstairs to get her groceries out of the car" and woke to find EMTs knocking on his car window and the young lady asleep in the passenger seat. When the EMTs questioned him, he told them that he was "okay" and did not need hospitalization. He then tried to drive away, only to be stopped by a police officer, who ordered him to step out of the vehicle. Appellant complied, at which point the officer asked, "what's this bag in your vehicle[?]" Appellant testified that he never heard anyone make an attempt to awaken him and that at no point was he helped out of his vehicle by EMTs. He testified that the "young lady" got her groceries out of the vehicle after the police arrested him.

At the close of the suppression hearing, appellant's counsel argued that the officer violated the Fourth Amendment by entering an illegally parked vehicle in order to move it. Counsel argued that, even if the court credited Officer Smith's

account, there was "no indication that [appellant] would not have been able to move his car given the opportunity" once he was released by the EMTs, and that "nothing in the vehicle laws permits an officer to enter an illegally parked car and move it" rather than tow it. The court credited Officer Smith's testimony and denied the motion to suppress, finding that appellant "had some difficulty in standing up" when he got out of the SUV; that while the EMTs were trying to determine whether appellant was okay, the officer opened the door of the SUV to try to get in to move it, "not to search it"; that the officer was "simply doing his job appropriately to move a car out of an area where it was blocking traffic"; and that the officer found the ziplock bags "before he had fully sat down and certainly before he had moved the car or turned off the engine[.]" Citing *Jones v. United States*, 330 A.2d 248 (D.C. 1974),[5] the court stated that it was "not a violation of

---

[5] *See id.* at 249 (reasoning that, "in light of the exigent circumstances presented by the hostile crowd [that had gathered at the scene of an arrest] and the need to move the [arrestee's] car which was blocking traffic," the police officer "rightfully entered the automobile" because "only [the officer] was authorized to operate the vehicle [with] appellant being under valid arrest and his passenger not in possession of a permit," and holding that the officer's seizure of a pistol found in plain view upon entering the car was lawful). We note that while the prosecutor argued to the trial court that exigent circumstances justified the officer's entry into the vehicle, the government does not appear to make that argument on appeal — perhaps because there was no evidence that any blocked vehicles were attempting to enter or exit the parking lot at the time Officer Smith took action, and because there were a number of officers on the scene who could have guarded the running vehicle.

[appellant's] Fourth Amendment rights for the officer to simply get into the car to move it out of the way."

The suppression-hearing testimony was incorporated into the bench trial. After the government presented a Drug Enforcement Administration (DEA) report certifying that the material the officer recovered from the vehicle was cocaine,[6] and after the defense rested without presenting any evidence, the court found appellant guilty. This appeal followed.

On appeal, appellant does not contest that the cocaine was in plain view when Officer Smith entered appellant's vehicle. He argues, however, that the plain-view doctrine,[7] which requires that an officer be lawfully in a viewing position, does not apply because the officer "had no legal basis to enter [appellant's] car and thus the two packets of cocaine should have been

---

[6] Appellant waived his opportunity to confront the DEA chemist.

[7] *See Cady v. Dombrowski*, 413 U.S. 433, 445 (1973) ("[O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.") (quoting *Harris v. United States*, 390 U.S. 234, 236 (1968)); *see also Texas v. Brown*, 460 U.S. 730, 737 (1983) (explaining that for the plain view doctrine to permit the warrantless seizure of private possessions, the "police officer must lawfully make an 'initial intrusion' or otherwise properly be in a position from which he can view a particular area").

suppressed." Appellant asserts that he had a "constitutionally protected privacy right" in his vehicle, that there was no complaint that appellant was inappropriately parked on private property, that no traffic or other "regulations or laws had been violated," that the officer "had no authority to enforce the apartment building's rules regarding parking" in a lot on private property, that appellant's leaving his vehicle unattended was a situation that Officer Smith had created, and that there was no evidence that appellant could not have returned to his car to move it after he was checked out by the EMTs.[8]

## II. Applicable Law

Our review of a denial of a motion to suppress is "limited." *Gatlin v. United States*, 833 A.2d 995, 1005 (D.C. 2003). "We view the evidence in the light most favorable to the prevailing party, and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling." *Davis v. United States*, 781 A.2d 729, 734 (D.C. 2001) (citation and internal quotation marks omitted). We defer to the trial court's findings of fact and "uphold them unless they

---

[8] Appellant no longer argues, as he did in the trial court, that his Fourth Amendment rights were violated when "government agents" (the EMTs summoned by Officer Smith) removed him from his vehicle even though he had not requested assistance.

are clearly erroneous." *Shelton v. United States*, 929 A.2d 420, 423 (D.C. 2007) (quoting *Prince v. United States*, 825 A.2d 928, 931 (D.C. 2003)). The trial court's legal conclusions, however, are reviewed *de novo*. *Castellon v. United States*, 864 A.2d 141, 148 (D.C. 2004).

Although an individual's privacy interest in a vehicle is lesser than his privacy interest in a dwelling, *California v. Carney*, 471 U.S. 386, 390 (1985), an individual does have a protected privacy interest in his vehicle. *See Arizona v. Gant*, 556 U.S. 332, 345 (2009) ("Although we have recognized that a motorist's privacy interest in his vehicle is less substantial than in his home, . . . the former interest is nevertheless important and deserving of constitutional protection[.]"). Nevertheless, the general rule that police may not enter a private vehicle without a warrant is subject to a number of exceptions. One such exception recognizes that police officers "frequently . . . engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. at 441. What has come to be known as the "community caretaking" justification for a warrantless entry into private property is premised on the "ambulatory character" of vehicles, the reality that "enforcement of the traffic laws and supervision of vehicle traffic may be a large

part of a police officer's job[,]" and the fact that police officers have "extensive, and often noncriminal contact with automobiles[.]" *Id.* at 442-43.[9]

In *Cady*, county police officers conducted a warrantless search of the trunk of a vehicle they had ordered impounded after its driver (a Chicago police officer who was "intoxicated . . . and could not make arrangements to have the vehicle towed and stored") crashed it and left it along the highway, where it constituted a nuisance. *Id.* at 435, 437, 443. The Court held that the county police had engaged in a "constitutionally reasonable" "caretaking 'search'" given that the vehicle, which they "reasonably believed to contain a gun, was vulnerable to intrusion by vandals[.]" *Id.* at 447-48. Subsequently, in *South Dakota v. Opperman*, the Supreme Court recognized that, as part of their community caretaking function, police will often remove vehicles to "permit the uninterrupted flow of traffic" and "will . . . frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." 428 U.S. 364, 368-69 (1976). The Court held that

---

[9] Courts have been "divided on the question of whether the community caretaker exception applies outside of the automobile context," *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 556 (7th Cir. 2014), but this court has recognized that the community caretaking function may apply outside that context, at least in "exceptional circumstances." *United States v. Gaskin*, 368 A.2d 1138, 1139 (D.C. 1977). This debate need not concern us here.

police, following standard police procedures, may lawfully conduct a warrantless inventory search of vehicles impounded pursuant to their community caretaking function. *Id.* at 376.

The Court explained in *Cady* that "[t]he Framers of the Fourth Amendment have given us only the general standard of 'unreasonableness' as a guide" in determining whether an intrusion for which a warrant is not required passes constitutional muster. *Cady*, 413 U.S. at 448. Accordingly, in determining whether a police officer's entry into a vehicle violated a defendant's Fourth Amendment rights or instead was lawful under the community caretaking exception, courts look to whether the police action was reasonable in the circumstances. *See, e.g.*, *United States v. Sanchez*, 612 F.3d 1, 4 n.2 (1st Cir. 2010) ("The community caretaking exception to the Fourth Amendment's warrant requirement allows the police to impound a vehicle . . . *when it is reasonable to do so* (say, to remove an impediment to traffic or to protect a vehicle from theft or vandalism)." (emphasis added)); *Wilson v. State*, 975 A.2d 877, 891 (Md. 2009) (noting that the goal is "assuring that the exercise of the public welfare community caretaking function is conducted reasonably"); *State v. Kramer*, 759 N.W.2d 598, 610 (Wis. 2009) (considering "whether the officer's exercise of a bona fide community caretaker function was reasonable").

A number of courts have applied the community caretaking exception to uphold warrantless entries by police into unattended, running vehicles. *See, e.g.*, *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998) (holding that under the community caretaking function, officers were entitled to enter unlocked and running car without a warrant "in order to protect themselves and the public from the danger created by the manner in which [the] car was left unattended"); *United States v. Bell*, No. 01-691, 2002 WL 171742, at *3 (E.D. Pa. Jan. 31, 2002) (ruling that officer "was entitled to make a warrantless entry into defendant's car for the purposes of protecting law enforcement officials and the public from the danger posed by defendant's unattended running vehicle and preventing theft of defendant's car"); *State v. Carroway*, No. A-1966-11T3, 2013 WL 3329453, at *2 (N.J. Super. Ct. App. Div. July 3, 2013) (upholding trial court determination that officer who found a handgun in plain view in arrestee's minivan had lawfully entered the vehicle to turn off the ignition pursuant to his community caretaking function); *People v. Lockhart*, No. 4-09-0671, 2011 WL 10481431, at *2, *4 (Ill. App. Ct. Mar. 10, 2011) (holding that police officer performed caretaking function when he turned off the engine, retrieved the keys, and locked the doors of defendant's unattended truck after defendant had been arrested for driving on a suspended license, and that seizure of drugs the officer found in plain view on the

driver's seat when he reached into the truck did not violate the defendant's constitutional rights); *State v. Jones*, No. A-5614-07T4, 2010 WL 4119661, at *6 (N.J. Super. Ct. App. Div. May 6, 2010) (holding that where defendant whom police arrested for trespassing had left the engine running in his car, officer's entry into the car to close the windows, move the car from a handicapped space, turn off the engine, and lock the doors, was a proper exercise of the police's community caretaking function); *Commonwealth v. Lyons*, 390 A.2d 752, 753-54 (Pa. Super. Ct. 1978) (holding that police officers "had the right, pursuant to their caretaking functions" to open defendant's car door to turn off the engine after arresting defendant for driving while intoxicated); *see also United States ex rel. LaBelle v. LaVallee*, 517 F.2d 750, 755 (2d Cir. 1975) (upholding as legitimate police officer's warrantless intrusion into an unattended car that had come to a stop on a steep, icy road in a traffic lane, where the officer's purpose was to see whether the brake was on, "a simple and necessary safety precaution which was clearly justifiable as part of the police 'community caretaking function'").

## III. Analysis

Appellant is correct that he had a protected privacy interest in his vehicle even though he left it unattended when the EMTs escorted him to the ambulance.

We are satisfied, however, that Officer Smith's entry into the vehicle fell within the community caretaking exception (which the trial court applied, though without calling it by name), and thus that the trial court was not required to suppress the drugs the officer found when he was getting into the vehicle in order to move it out of the way of traffic.  Although Officer Smith suspected that appellant had recently used narcotics, the trial court credited his testimony that he did not enter the car to search for drugs, a finding that we cannot say is clearly erroneous.[10]  Thus, Officer Smith's entry into the vehicle was **"divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."**  *Cady*, 413 U.S. at 441.  And although appellant asserts that no regulations were violated and that there was no evidence that Officer Smith was requested to or had authority to enforce any parking rules that applied to the private parking lot, the trial court credited the officer's testimony that, because of how the SUV was parked, "nobody could come on or off the property" — i.e., that appellant's vehicle was obstructing entrance onto the parking lot from the street.  As an MPD officer, Officer Smith had authority to enforce the regulation providing that "[n]o person shall park a motor vehicle  . . . [i]n a manner to obstruct the entrance to any . . .

---

[10]    Further, although Officer Smith mentioned that he "needed identification," the trial court found that he entered the vehicle to move it, not to search for anything.

parking lot[.]" 18 DCMR § 2405.3 (f).[11] District of Columbia regulations also authorized the officer to "remove[] or convey[]," "by towing *or otherwise*," "[a]ny unattended vehicle found parked in violation of any traffic regulation[.]" 18 DCMR § 2421.1 (emphasis added).[12] That the officer had authority to remove a vehicle impeding traffic or threatening public convenience is "beyond challenge[,]" *Opperman*, 428 U.S. at 369, and we see no reason to entertain a challenge to that authority here merely because there is no evidence that, at the time Officer Smith acted, other vehicles were actually attempting to enter the parking lot and were being impeded from doing so.

Additionally, the fact that the unattended vehicle was a situation that Officer Smith had created by summoning the EMTs is of no moment. *Cady*, the case in

---

[11] *Cf. State v. Ravellette*, No. 30865-7-II, 2004 Wash. App. LEXIS 1897, at *9 (Wash. Ct. App. Aug. 17, 2004) (agreeing with trial court finding that blocking a private, gated driveway "created significant potential for traffic and safety problems and required the police to engage in community caretaking").

[12] Officer Smith might also have had an obligation to turn off the vehicle's ignition, even if he did not attempt to move the vehicle, in order to prevent a non-moving violation. *See* 18 DCMR § 2418.1 ("No persons driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key, and effectively setting the brake."). Under other circumstances, he might also have done so to protect against unauthorized use of the vehicle, though that does not seem to have been a concern in this case since there were four officers on the scene. The record does not establish whether Officer Smith could have seen the cocaine had he merely reached inside the vehicle instead of opening its door and getting in.

which the Supreme Court first applied the community caretaking exception, was one in which the police officers' need to gain entry into a vehicle was necessitated by their directive that the vehicle be towed to a private lot, where it was "vulnerable to intrusion by vandals[.]" *Cady*, 413 U.S. at 448; *see also id.* at 447-48 ("[T]he type of caretaking 'search' conducted here of a vehicle . . . that had been placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained.").

The real issue raised by the facts of this case is whether Officer Smith acted reasonably in entering appellant's vehicle in order to move it when, as appellant puts it, there was no evidence that appellant could not have returned to his car to move it himself after he was checked out by the EMTs. Officer Smith testified that appellant had "come to" after the EMTs shook him, and, as appellant emphasizes, although (according to the officer's credited testimony) appellant required some assistance to walk to the ambulance, he remained standing without assistance, outside the ambulance, the entire time he was with the EMTs and was released by the EMTs after 15 to 20 minutes. Appellant implies that the officer acted unreasonably in not waiting longer to ascertain whether appellant would be able to move his vehicle when, it appears, traffic was not being immediately impacted and no vehicles were being inconvenienced by the placement of appellant's SUV.

However, viewing the evidence in the light most favorable to the government, we cannot say that it was unreasonable for Officer Smith to believe that appellant was not and would not soon be in a condition to move the vehicle himself. Appellant's brief acknowledges his "initial unsteadiness or grogginess[.]" Officer Smith, suspecting that appellant — who had fallen into an unconscious state at the steering wheel of his running vehicle in the ingress/egress area of a parking lot — was suffering the effects of recent heroin use, doubtlessly viewed appellant as too impaired to promptly return to the controls of his vehicle. The officer also did not know how long the EMTs would detain appellant. Requiring an officer to wait for an unspecified (and unknowable) amount of time for the possibility that an apparently impaired driver will be able to safely move his vehicle to a location where it will not obstruct traffic puts an undue burden on law enforcement, one at odds with the purpose of the community caretaking exception and one that we are not willing to impose here.

Further, the "young lady" who was the only passenger in appellant's vehicle, was likewise being checked out by EMTs. Although she had not been taken away by ambulance, she apparently was not appellant's wife (appellant's wife "later on came to pick . . . up" the keys to the SUV from the police station), the evidence does not suggest that she was otherwise a candidate to move the vehicle, and

Officer Smith suspected that she, too, was "high" from recent drug use. And, in any event, the fact that the police might have exercised their community caretaking "by 'less intrusive' means does not, by itself, render [their action] unreasonable." *Cady*, 413 U.S. at 447; *see also United States v. Rodriguez-Morales*, 929 F.2d 780, 787 (1st Cir. 1991) ("There is no requirement that the officers must select the least intrusive way of fulfilling their community caretaking responsibilities.").[13]

## IV.   Conclusion

We conclude that Officer Smith's entry into appellant's vehicle was "constitutionally reasonable." *Cady*, 413 U.S. at 447. Accordingly, the trial court did not err in declining to suppress the cocaine the officer found in plain view upon entering the vehicle. Wherefore, the decision of the trial court is

*Affirmed.*

---

[13] Officer Smith's actions were certainly less intrusive than impounding appellant's vehicle would have been, since impoundments are accompanied by inventory searches, and such a search (one purpose of which includes protecting the police against false claims, *see Madison*, 512 A.2d at 282) presumably would have involved all areas of the vehicle.