*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-816

MICHAEL A. HAWKINS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-9871-12)

(Hon. Patricia A. Broderick, Trial Judge)

(Submitted October 14, 2014                    Decided April 9, 2015)

*Howard Margulies* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Sharon A. Sprague*, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*: Appellant Michael A. Hawkins appeals his convictions at a bench trial of possession with intent to distribute marijuana and a related offense. On appeal, appellant argues that the trial court made two errors. First, that the trial court erroneously ruled that the Deputy U.S. Marshal's entry

into the vehicle with a running engine was reasonable. Second, that the trial court abused its discretion by not requiring the government to identify the specific documents relied upon by its expert witness who testified to appellant's intent to distribute. We affirm.

## I.

On June 7, 2012, two Deputy U.S. Marshals, Deputy Monsalvo and Deputy Kolosky, conducted surveillance related to a fugitive warrant issued for appellant. A vehicle driven by appellant, a tan Pontiac Montana with Maryland plates, was parked in the parking lot of an apartment complex. The vehicle was backed into its parking space. The vehicle was registered to Mercedes Young. Someone with the U.S. Marshals had Ms. Young's phone number, but it is unclear when the U.S. Marshals contacted Ms. Young. The two Marshals sat in separate cars outside of the apartment building and communicated via cell phone.

Deputy Kolosky informed Deputy Monsalvo that someone with a red backpack matching the description of appellant walked out of the apartment building. Deputy Monsalvo confirmed that the individual carrying the red backpack was appellant. Appellant entered the driver's side door of the Pontiac,

placed the backpack on the front passenger seat, and started the vehicle. Appellant then exited the vehicle and walked toward its rear. Both Marshals drove their vehicles in front of the Pontiac to block it in the parking space. Deputy Monsalvo arrested appellant.

The Marshals directed appellant to walk toward the front of the vehicle and sit on the ground. Deputy Kolosky then entered the driver's side door of the vehicle to turn it off. It is unclear whether the driver's side door was open. When inside the vehicle, Deputy Kolosky informed Deputy Monsalvo that there was a strong smell of marijuana coming from inside the vehicle. Deputy Monsalvo then opened appellant's passenger's side door and smelled strong marijuana "right directly in front of. . . ." him. Deputy Monsalvo then picked up the red backpack, placed it on the hood of the vehicle, and opened it. The smell became even stronger. Inside the backpack, Deputy Monsalvo found a tin can which contained "several baggies with a green-like substance and small pills and various empty Ziploc baggies along with a digital scale and a grinder." Deputy Kolosky then turned the car off and removed the keys.

Appellant was charged with possession with intent to distribute marijuana (Count I), possession of ecstasy (Count II), and possession of drug paraphernalia

(Count III). On October 17, 2012, appellant filed a Motion to Suppress Tangible Evidence on the theory that the Marshal's entry into appellant's vehicle violated the Fourth Amendment. The trial court held an evidentiary hearing on May 21, 2013, and heard testimony from Deputy Monsalvo, Deputy Kolosky, and a witness. The trial court found that the exigency created by the running engine justified the Marshal's warrantless entry to the vehicle, and denied appellant's motion to suppress. The government dismissed Count II.

The motions testimony was incorporated into the bench trial. The bench trial concluded on May 28, 2012, and the trial court convicted appellant of Counts I and III. Appellant timely appeals.

## II.

Appellant argues that the trial court erred in concluding that the running vehicle created an exigent circumstance, thus justifying the Marshal's warrantless entry into the vehicle. In addition, appellant argues that the community caretaking doctrine does not apply outside of the vehicle inventory context[1] and that the

---

[1] Appellant, in his brief on appeal, argued that the community caretaking doctrine did not apply to the Marshal's intrusion. We may affirm the trial court's

(continued…)

vehicle could not be searched incident to arrest. We conclude that the Marshal entered the vehicle to pursue a valid community caretaking function.

## A.

The trial court held that the Marshal's entry into the vehicle was justified by the exigent circumstances exception to the Fourth Amendment warrant requirement, and thus was reasonable. "On appeal from a denial of a motion to suppress, this court reviews the trial court's legal conclusions de novo and defers to the trial court's findings of fact unless they are clearly erroneous." *Limpuangthip v. United States*, 932 A.2d 1137, 1141 (D.C. 2007).

One well-recognized exception to the Fourth Amendment warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011)

---

(…continued)

denial of a motion to suppress for different reasons than argued by the parties as long as no procedural unfairness results. *Tuckson v. United States*, 77 A.3d 357, 373 (D.C. 2013). Appellant had a full and fair opportunity to brief the community caretaking doctrine, so no procedural unfairness results from this court affirming for reasons not argued in the government's brief. *See Wilson v. United States*, 102 A.3d 751, 753 n.2 (D.C. 2014).

(internal quotation marks and alteration omitted). Exigent circumstances can exist in a variety of circumstances where there is not sufficient time to secure a warrant. *E.g.*, *Vale v. Louisiana*, 399 U.S. 30, 34-35 (1970) (examples: hot pursuit, imminent destruction of evidence, and protection of the police or the public). The public safety exception is appropriate when an officer reasonably believes that a person is injured and needs aid or that violence is about to occur. *See e.g.*, *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006) ("The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties; an officer is not like a boxing (or hockey) referee, poised to stop a bout only if it becomes too one-sided.").

This case does not fall under the exigent circumstances doctrine for two reasons. First, turning off a vehicle left running in a parking lot is not analogous to hot pursuit of a suspect of a crime, preventing the imminent destruction of evidence of a crime, or preventing immediate bodily injury. Left alone, there is no indication that the vehicle posed an immediate safety risk to the community. The Marshals could have guarded the car until the owner arrived. The vehicle did not block the street and did not impede traffic. Second, it is unclear whether the Marshals could even seek a warrant to enter the vehicle for the purpose of turning the engine off. A search warrant requires probable cause that contraband exists in

the car and it appears doubtful that the Marshals had probable cause, or even a belief, that the car contained contraband until Deputy Kolosky entered it. As such, this situation was not an exigent circumstance justifying a warrantless search.

## B.

The community caretaking doctrine justifies the actions of the Marshal. The community caretaking doctrine applies when an officer's activities are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *United States v. Gaskin*, 368 A.2d 1138, 1139 (D.C. 1977). When determining whether an officer's actions are divorced from law enforcement functions, we objectively view the totality of the circumstances. *See Brigham City*, *supra*, 547 U.S. at 404.

Since *Cady*, courts have struggled to define the contours of the community caretaking function. *E.g.*, *Pleasant-Bey v. United States*, 988 A.2d 496, 502 (D.C. 2010); *see also Butterfield v. City of Milwaukee*, 751 F.3d 542, 556 (7th Cir. 2014) (summarizing circuit split on breadth of community caretaking doctrine). Courts have applied differing tests for whether an officer's community caretaking action

was reasonable under the Fourth Amendment. Some states apply a balancing test and other states invoke variations of a reasonableness analysis.

Several states use a balancing test to evaluate reasonableness. *E.g.*, *Hernandez v. State*, 376 S.W.3d 863, 874 (Tex. App. 2012) (balancing the nature and level of the distress exhibited by the individual; the location of the individual; whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and to what extent the individual, if not assisted, presented a danger to himself or others.); *State v. Kramer*, 759 N.W.2d 598, 611 (Wisc. 2009) (balancing the degree of the public interest and the exigency of the situation; the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; whether an automobile is involved; and the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.). This type of balancing test is also used to evaluate the government's conduct in other types of searches. *E.g.*, *Maryland v. King*, 133 S. Ct. 1985, 1970 (2013) (special needs search); *Winston v. Lee*, 470 U.S. 753, 759 (1985) (balancing a citizen's privacy and security interests against the government's need for a surgical intrusions into the citizen's body); *Illinois v. Lafayette*, 462 U.S. 640, 644 (1983) (inventory search); *United States v. Lewis*, 486

A.2d 729, 737 (D.C. 1985) (Nebeker, J., dissenting) (discussing balancing test as alternative to exclusionary rule).

Other states, including Virginia and Maryland, use variations of a reasonableness test. Virginia courts apply the following test: "The appropriateness of applying the community caretaker doctrine to a given factual scenario is determined by whether: (1) the officer's initial contact or investigation is reasonable; (2) the intrusion is limited; and (3) the officer is not investigating criminal conduct under the pretext of exercising his community caretaker function." *Commonwealth v. Waters*, 456 S.E.2d 527, 530 (Va. 1995). Maryland courts evaluate whether: 1) there were specific and articulable facts reasonably warranting the action, 2) the government's action was reasonable, 3) the intrusion ended when the citizen no longer needed assistance. *E.g.*, *Wilson v. State*, 975 A.2d 877, 891 (Md. 2009). To assess reasonableness, Maryland courts consider the availability, feasibility, and effectiveness of alternatives to the officer's intrusion. *Id.* The Court of Appeals of Maryland did not adopt the requirement that the government's interests outweigh the citizen's interest in being free from government interference, but instead required that the intrusion last no longer than necessary to effectuate its purpose. *Id.* at 890-91.

This court considered the reasonableness of a warrantless car entry under the community caretaking exception in *Davis v. United States*, No. 13-CM-817, 2015 D.C. App. LEXIS 39, \*18-21 (D.C. Feb. 26, 2015).  The facts of the instant case lead us to further adopt a hybrid of the reasonableness and balancing tests, in light of the totality of the circumstances, to assess whether an officer's community caretaking conduct comports with the Fourth Amendment.  This test best aligns with the requirements of the Fourth Amendment, the flexibility needed for officers to perform a variety of non-law-enforcement functions, and the clarity needed for this court's review of an officer's conduct.  In order for a law enforcement officer's community caretaking conduct to be reasonable, the government must show:  1) by specific and articulable facts that the government's conduct was totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute; 2) the government's conduct was reasonable considering the availability, feasibility, and effectiveness of alternatives to the officer's action; 3) the officer's action ended when the citizen or community was no longer in need of assistance; 4) the government's interests outweigh the citizen's interest in being free from minor government interference.  This court does not require the government to pursue the least restrictive means of correcting the problem.

**C.**

Appellant does not contest that entering the vehicle to turn the engine off was unrelated to the Marshal's law enforcement functions. *See Cady*, *supra*, 413 U.S. at 441. The Marshals, prior to entering the Pontiac, had no reason to suspect that evidence of a further crime would be located inside the vehicle.

Even though *Cady* did not address whether an officer's community caretaking conduct should be evaluated as a Fourth Amendment search, subsequent Supreme Court decisions suggest that this conduct should be evaluated as a search. *Id*. at 442 n.\* ("We do not decide [whether a 'search' requires the specific intent to discover evidence of a crime]."); *see, e.g.*, *Brigham City*, *supra*, 547 U.S. at 403 (entry into home is a "search" even though done "to render emergency assistance to an injured occupant"). For the reasons that follow, we hold that the Marshal's entry into the vehicle to turn the engine off was reasonable under the Fourth Amendment.

First, the record reflects specific and articulable facts that the Marshal's conduct was totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. Absent action from the

Marshal, the vehicle's engine would have remained running and the doors unlocked after the Marshals left the scene of the arrest. Action was necessary to safeguard the vehicle and its valuables from theft, protect the community from unauthorized use of the vehicle, prevent emissions from prolonged idling, and prevent a non-moving violation. *See Davis*, *supra*, 2015 D.C. App. LEXIS 39, at *16 & n.12; 18 DCMR § 2418.1 (2010) ("No persons driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key, and effectively setting the brake.").

Second, the record reflects that the Marshal's actions were reasonable in light of alternatives to the entry into the vehicle. The Marshal entered the vehicle to turn the engine off and to retrieve the keys. Even though we do not require officers to pursue the least restrictive means of intrusion possible, *see Davis*, *supra*, 2015 D.C. App. LEXIS 39, at *20, there is no evidence in the record to show that the owner of the vehicle was readily available to take possession of the vehicle. This court would be faced with an entirely different situation if the owner of the vehicle was at the scene and ready to take possession of the vehicle. In addition, the Marshals likely could not have sought a warrant because it appears there was no crime-based probable cause to enter the vehicle. As such, opening the door to

turn off the engine and remove the keys was an appropriate action given the limited alternatives.

Third, the record reflects that the Marshal smelled the marijuana before the need for assistance dissipated. The Marshal smelled the marijuana immediately upon entering the vehicle, well before turning off the engine and retrieving the keys.

Fourth, the record reflects that the government's interests outweighed appellant's interest in being free from this slight government interference. The Supreme Court has held that an individual's privacy interest in a vehicle is lesser than his privacy interest in a dwelling because, in part, of the mobile nature of the vehicle. *See California v. Carney*, 471 U.S. 386, 390 (1985). This diminished expectation of privacy is weighed against the government's interest in ensuring the security of the vehicle and its contents before the vehicle's owner takes possession of the vehicle. Appellant's privacy interest was similar to his interest in ensuring that his belongings, namely the red backpack, were secure and not at risk of theft. The entry here was minimal because officers merely needed to turn off the engine, and did not search through the rest of the car or open any closed containers or compartments. In this situation the record reflects that the government's legitimate

interests in protecting the vehicle from theft and unauthorized use outweighed appellant's diminished expectation of privacy in the vehicle.

We hold that the Marshal's entry into the vehicle was reasonable. Thus, the trial court did not err in denying appellant's motion to suppress.

**III.**

Appellant asserts that the trial court abused its discretion by not requiring the government to identify the specific documents relied upon by its expert witness, Sgt. Boteler. This court reviews "a trial court's Rule 16 discovery determination for abuse of discretion." *United States v. Curtis*, 755 A.2d 1011, 1014 (D.C. 2000). Rule 16 of the Superior Court Rules of Criminal Procedure states:

> Expert Witness. At the defendant's request, the government shall disclose to the defendant a written summary of the testimony of any expert witness that the government intends to use during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) of this Rule and the defendant complies, the government shall, at the defendant's request, disclose to the defendant a written summary of testimony of any expert witness the government intends to use as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph shall describe the witnesses' opinions, *the bases and the*

> *reasons for those opinions*, and the witnesses' qualifications.

Super. Ct. Crim. R. 16 (a)(1)(e) (emphasis added).

At trial, the government's expert witnesses Vicki Siedel, Michael Jewell,[2] and James Boteler testified about the chain of custody of evidence, that the lab reports identified that the backpack contained marijuana, and that the drug paraphernalia revealed appellant's intent to distribute the marijuana. Officer Boteler testified that, based on his training and experience, the drug paraphernalia was indicative of appellant's intent to distribute. Officer Boteler testified that he relied upon "DOJ Hida [sic] reports" and a federal law enforcement newsletter called "The Informer," although he did not rely on any *specific* document when testifying about appellant's intent to distribute marijuana.[3] Appellant filed a Motion to Compel Discovery and alleged that the government failed to identify the specific HIDTA report and the specific issue of The Informer relied upon by

---

[2] Michael Jewell's testimony was stricken from the record because the government did not provide notice of this expert witness to defense counsel.

[3] HIDTA refers to High Intensity Drug Trafficking Area. Officer Boteler testified that The Informer is the Federal Law Enforcement Training Centers's "monthly update on case law related to federal law that is passed and heard in different courts throughout the United States."

Officer Boteler, as required by Rule 16 of the Superior Court Rules of Criminal Procedure. The government responded that it met its burden under Rule 16 because Officer Boteler's experience in the field was the basis for his opinion, and that Officer Boteler did not rely upon a specific document in forming his opinion. The trial court denied appellant's motion to compel further discovery.

Officer Boteler testified to all documents that informed his opinion about appellant's intent to distribute marijuana, and the government even produced these documents (even though it could not identify which specific annual report or issue of The Informer he relied upon). Given that the government met its obligations under Rule 16, the trial court did not abuse its discretion by denying appellant's request that the government identify the *specific* reports and newsletters relied upon by Officer Boteler.

**IV.**

We conclude that the trial court did not err by denying appellant's motion to suppress, albeit for different reasons than stated by the trial court, and that the trial court did not abuse its discretion in denying appellant's Rule 16 motion. Accordingly, the judgment is

*Affirmed.*